**DEJAY STORES, Inc., Dejay Central Stores, Inc., Dejay Eastern Stores, Inc., Dejay Western Stores, Inc., Dejay West Virginia Stores, Inc., Horman's Inc., Kay-Selly Stores, Inc., Plaintiffs-Appellants,**

v.

**Raymond F. RYAN, Defendant-Appellee.**

No. 17, Docket 23301.

United States Court of Appeals Second Circuit.

Argued Nov. 18, 1955.

Decided Jan. 23, 1956.

On Petition for Rehearing Feb. 20, 1956.

Jesse Climenko, Gallop, Climenko & Gould, New York City, for appellants.

Arthur S. Ecker, New York City, for appellee.

Before HAND, FRANK and MEDINA, Circuit Judges.

HAND, Circuit Judge.

The plaintiffs appeal from a judgment, summarily dismissing their complaint to recover income taxes, erroneously assessed for their fiscal year, 1943. They are a group of corporations that we shall call collectively "Dejay." All their interests are the same; their accounts were on an accrual basis, and their fiscal year began on February first and ended on January 31st. After deliberations beginning in June 1943, and after detailed consultation with actuaries and legal counsel their officers and directors had by the first of January 1944 settled all the terms and conditions of a pension trust for the benefit of their employees, and had agreed with the proposed trustee, a bank, upon the terms of a trust instrument that the bank would accept. The directors met on January 17, 1944, and adopted a "Plan," complete in all details; and directed the fiscal officers to "accrue" upon the books as of January 31, 1944, the contributions due for the year 1943, computed in accordance with its provisions. They advised a number of the beneficiary employees that the "Plan" had been adopted, and the contribution for 1943, amounting to $25,498, was duly "accrued" upon the books. However, no formal instrument or deed of trust to the bank was executed until March 27, 1944, when all the plaintiffs did execute and deliver a deed in the form agreed upon and paid to the bank the contribution just mentioned. Those passages in the "Plan" on which we think that the case turns were the following.

"All contributions made by the Company to the Plan shall be voluntary and the Company shall be under no legal liability to make any such contributions. Nothing herein contained shall entitle any person to any payment except out of the Trust herein provided for."

"Anything contained herein to the contrary notwithstanding, if a ruling satisfactory to the Company shall not have been received by August 1, 1944, or by such later date as the Company may specify, from the Commissioner of Internal Revenue that the Plan as herein set forth or as amended prior to the receipt of such ruling qualifies under Section 165 of the Internal Revenue Code or any amendments thereto, or if the stockholders of the Company at its next Annual Meeting to be held on May 17, 1944 do not approve the adoption of the Plan, the Company shall be entitled to withdraw all contributions theretofore made by it and the Plan shall terminate and all rights of the employees thereunder shall cease and come to an end."

The shareholders met on May 17, 1944, and did "approve the adoption of the Plan"; and on October 26, 1944, the Commissioner sent "Dejay" a letter, which we shall speak of later, declaring that the Plan "qualifies under Section 165 of the Internal Revenue Code." In accordance with this approval "Dejay" deducted the contribution from its in-

come for 1943, and paid the tax as so compiled.. Upon a review of "Dejay's" income tax return in 1947 a subsequent Commissioner changed this ruling and disallowed the deducted contribution upon the ground that, although it had been paid within sixty days after the end of the fiscal year, the deed of trust had not been executed during that year; and that for this reason the "Plan" did not fall within § 165 of the Internal Revenue Code, 26 U.S.C. § 165. "Dejay" paid the deficiency resulting from the disallowance of the deduction, and brought this action.

Upon the defendant's motion for summary judgment the only point that it raised or the judge considered was that "Dejay" had executed the deed after January thirty-first, 1944, and that therefore the trust had not been created in the fiscal year for which the deduction was claimed. The argument is that the relevant sections [1] require by implication that the trust be set up within the fiscal year, and that it is only the payment of the contribution that § 23(p) (1) (E) allows to be made within sixty days thereafter. We can find nothing in either section or in the Regulations [2] that so requires: the word used throughout the two sections is "trust," or "pension trust," except that under § 165(a) (2) the phrase, "trust instrument" once appears, and although that no doubt presupposes that such a document shall at some stage appear, there is no reason, so far as we can see, why it should be during the fiscal year, provided it is executed by the time the first contribution is made. Section 23 (p) (1) (E) declares that a payment within sixty days after the end of the year "shall be deemed" to be made within "the taxable year", when the employer keeps its books on an "accrual" basis; and we can see no reason, either express or implied, why it should be necessary that the "trust instrument" should not

have the same extended period. This does not mean that the "trust" itself must not be set up within the fiscal year; we assume that it must; but in the case at bar every element of a trust came into existence before February first, if the contribution "be deemed" to have been paid on January 31st, as the Act provided. There was (1) a trustee, (2) a res, (3) a transfer of the res to the trustee, (4) and a complete agreement upon all the terms on which the trustee should hold the res. What else was necessary we do not understand. It is true that under the law of New York, where the contract was made, a contract to make a trust is "void," when it is not in writing; [3] but the transaction had passed beyond a contract, if we assume, as we must, that the contribution was to be treated as though it had in fact been paid on January 31st. It made no difference that the terms on which the trustee was to hold the res were oral, for the law of New York does not make "void" an executed trust, [4] and the "trust instrument" however eventually necessary, was not one of the constituents of the "trust."

We should therefore feel obliged to reverse the judgment for this reason, were it not for a point not raised below: i. e. the language that we have already quoted from § VIII (7) of the "Plan" which made it conditional upon whether the shareholders approved it at a meeting to be held on May 17, 1944. Moreover, as has appeared, "Dejay," not only expressly provided in § VIII (7) of the "Plan" that all "contributions" were to be "voluntary," and that it should be "under no legal liability to make any"; but also that the "Plan" should entitle no "person to any payment except out of the Trust herein provided for." Thus, by virtue of the reserved right under § VIII (7) to "withdraw all contributions theretofore made," if the shareholders did not ap-

---

1. §§ 23(p) (1) and 165(o) Title 26 U.S.C.
2. Regulations 111 §§ 29(p) and 165.
3. § 31(8), N.Y. Personal Property Law, McK.Consol.Laws, c. 45.
4. Blanco v. Velez, 295 N.Y. 224, 66 N.E.2d 171.

prove the "Plan," there was no unconditional payment made within sixty days after January 31, 1944. We cannot agree that contributions which could be so withdrawn were paid "in the taxable year," even with the aid of § 23 (p) (1) (E); they were no more than a provisional deposit until the power to withdraw them ended on May 17, 1944. "Dejay" answers this argument in two ways. First, it says that the point was not raised below, which is apparently true; and second, that the Commissioner's withdrawal in 1947 of his approval of October 26, 1944 was invalid. The first objection is clearly unsound, for it is abundantly settled that an appellee may support the judgment by any reasoning from facts disclosed in the record, no matter when the objection is raised, although the appellant must of course have an opportunity to answer.[5] The second point requires more consideration. It is true that, when the "Plan" was presented to the Commissioner for his approval, the request was, not only for his general approval, but for "a ruling to the effect that the deductions from gross income claimed * * * for the fiscal year ended January 31, 1944, be allowed in accordance with Section 23(p) (1) (A) of the Internal Revenue Code, subject to audit." The answering letter of October 26, 1944 said "that the plan, as amended, meets the requirements of § 165(a) * * * and * * * the trust established thereunder is entitled to exemption. * * * Contributions made to the trust will be allowable as deductions from gross income * * * subject, however, to verification upon examination of your income tax returns." Thus the letter did not specifically answer the inquiry as to the deduction of the contribution for 1943; yet it seems to us that not to regard it as a complete answer to the inquiry would distort it out of its fair import. Thus, a twofold issue arises: (1) whether the letter was a definitive ruling, and conclusive in law; and (2) if it was not, what was the effect of "Dejay's" reliance upon it.

■ As to the first point, there is nothing in the Act, so far as it deals with pension trusts, that gives the Commissioner any express authority to pass upon their validity except § 165(a) (3) (B) which authorizes him to decide whether the plan is "discriminatory in favor of employees who are officers" and the like. We may assume *arguendo* that his ruling upon that feature of a plan would be final, at least if the employer acted in reliance upon it. The Regulations do, however, have something to say about the duties of the Commissioner. Section 29.23(p)–2 requires an employer seeking deduction of contributions to a pension plan to file an elaborate description of it in prescribed details, and every year to file a similar statement. However, the regulation does not prescribe any action that the Commissioner shall take after receiving it; and certainly not a syllable giving him any authority to determine its sufficiency or that the employer may accept it as authoritative. Section 29.165–1(e) also provides that, in order to secure exemption from taxation of the income of a "pension trust" the employer must annually file with the collector "proof of exemption" of the trust, consisting of several documents, among others, copies of the "trust instrument and of the employer's plan." These the collector is to "forward to the Commissioner for decision whether the trust is exempt"; but there is again no intimation that his first decision whatever it may be is to be final, as might be inferred, if he was directed to report it to the taxpayer. It is true that, the statement filed by "Dejay," was intended to comply with both these regulations; but, even if we were to hold that they would have been a valid implementation of the Act, if they had intended to vest in the Commissioner authority

---

5. Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224; Ticonic National Bank v. Sprague, 303 U.S. 406, 410, 58 S.Ct. 612, 82 L.Ed. 926; LeTulle v. Scofield, 308 U.S. 415, 421, 60 S.Ct. 313, 84 L.Ed. 355.

to communicate this definitive ruling to the taxpayer, they did not pretend to do so; and his letter did not have any such effect. Thus the situation was altogether different from that in H. S. D. Company v. Kavanagh, 6 Cir., 191 F.2d 831, where the Commissioner had exercised the authority granted him in § 165(a) (3) (B).

■ Since the regulation did not make the Commissioner's letter of October 26, 1944, an authoritative ruling, there remains only the question whether, because of "Dejay's" reliance upon it "Dejay" acquired a claim that may serve as a counterclaim to the complaint herein under the doctrine established by the decisions of the Supreme Court in Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421; Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265; and Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296. "Dejay" argues in its reply brief that, if it had known that it would not be allowed to deduct its contribution for 1943, it could have used the tax upon that contribution which it was forced to pay as a deduction in computing its excess profits taxes for 1944 and 1945, because § 23(p) (1) (A) (iii) and (iv) allows a taxpayer to reserve after the year of payment deductions for either "normal" or "past service credits." "Dejay" did not raise this point before the district court, and, although this was a summary judgment, the plaintiff ordinarily has the burden of showing that there are issues that should not be decided without a trial. Nevertheless, we think that, since we have allowed the defendant to raise an issue which it did not raise in the district court, we ought to give the same privilege to "Dejay." Therefore, the judgment will be reversed; and a new trial will be ordered; but in accordance with Fed. Rules Civ.Proc. Rule 56(d), 28 U.S.C. the only issues that will be tried are (1) by how much, if any, "Dejay" could have reduced its excess profits taxes for 1944 and 1945, had it not deducted its

contribution for 1943 in computing its excess profits tax for that year; and (2) if it could have done so, whether its overpayments would be a valid counterclaim in this action. We express no opinion on either question.

Judgment reversed; cause remanded for further proceedings in accordance with the foregoing opinion.

### On Petition for Rehearing

PER CURIAM.

"Dejay" petitions for a rehearing on two grounds: (1) that it be allowed to prove what tax savings it would have made in other years than 1944 and 1945; (2) and that we should not have considered the assent of the shareholders as suspending the Plan beyond January 31, 1944.

■ (1) The petition is overruled as to the second point which is wholly without merit.

■ (2) Save in its reply brief "Dejay" did not anywhere suggest that its payment of the tax for 1943 in reliance upon the Commissioner's ruling of October 26, 1944, was a ground for relief, on the ground that, if it had known that the tax was not due till 1944, it could have saved some part of those taxes that it paid in later years. Indeed, even in its reply brief it went no further than to argue that it might have saved a part of its excess profits tax for 1944 and 1945. Now it wishes to be allowed to show, not only what part of its excess profits taxes for 1944 and 1945 it could have saved, but also what part of its income taxes it could have saved for those and any later years. This request, doubly delayed though it is, we are willing to allow; "Dejay" may attempt to prove generally any losses that it sustained by reliance upon the ruling of October 26, 1944. Nevertheless we wish to have it clearly understood that by citing the Supreme Court decisions which we did in our opinion, we did not, and do not, mean in any sense to hold that any part of such a claim falls within the doctrine they lay down.

We wish to correct a mistake in our opinion in speaking of the claim as a "counterclaim." Of course it would not be a "counterclaim," but rather an alternative claim to that pleaded in the complaint.