BARRETT TIMBER AND DUNNAGE CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 60565. Filed October 18, 1957.

Vincent B. Lewin, Esq., for the petitioner.
Charles B. Markham, Esq., for the respondent.

OPINION.

MURDOCK, *Judge:* The Commissioner determined a deficiency in income and excess profits tax of the petitioner in the amount of $15,987.47 for its taxable year ended September 30, 1951. The only issue for decision is whether the Commissioner erred in disallowing a deduction of $20,108.29 claimed as a contribution to Barrett Timber and Dunnage Corporation Employees' Pension Trust. The facts have been presented by a stipulation which is adopted as the findings of fact.

The petitioner was incorporated under the laws of New York in November 1944. It uses an accrual system of accounting and files Federal income tax returns on the basis of a fiscal year ending September 30.

Section 23 (p) applies specifically to contributions of an employer to an employees' trust or annuity plan and provides in paragraph (1) that if contributions are paid by an employer to or under a pension plan such contributions "shall not be deductible under subsection (a) but shall be deductible, if deductible under subsection (a) without regard to this subsection, under this subsection but only to the following extent." Following the words "to the following extent," subparagraphs (A), (B), (C), and (D) provide limitations, one effect of which is to deny deduction of a liability incurred in the taxable year by an accrual basis taxpayer, even though it would have been deductible under section 23 (a), unless it is actually paid within the 60 days following the close of that year. *Abingdon Potteries, Inc.*, 19 T. C. 23. Subparagraph (E) is as follows:

For the purposes of subparagraphs (A), (B), and (C), a taxpayer on the accrual basis shall be deemed to have made a payment on the last day of the year of accrual if the payment is on account of such taxable year and is made within sixty days after the close of the taxable year of accrual.

It is not necessary to consider any of these limiting provisions in this case unless the fiscal year ended September 30, 1951, was "the taxable year of accrual" of the $20,108.29, that is, unless it would have been deductible under section 23 (a) if subsection (p) could be disregarded. Thus, the first question here is whether the $20,108.29 contribution would have been deductible for the taxable year under section 23 (a) without regard to subsection (p) since only then does subsection (p) apply. *Abingdon Potteries, Inc., supra.*

The petitioner uses an accrual method of accounting and the $20,108.29 would not be an allowable deduction for the taxable year ended September 30, 1951, under subsection (a) unless the petitioner incurred the liability to pay it during that year. A liability is not incurred for tax purposes within a taxable year unless all of the events which fix

the amount of the liability and the obligation of the taxpayer to pay it occurred in that year. *United States* v. *Anderson*, 269 U. S. 422.

A pension plan and trust agreement was submitted to the board of directors of the petitioner at a meeting on September 21, 1951, and a resolution was adopted at that meeting instructing the corporation to execute that pension plan and trust agreement. The resolution also provided that Max W. Goldberg be requested to accept appointment as trustee of the pension plan and trust agreement. Goldberg subsequently gave his consent at the same meeting.

"A resolution was unanimously adopted [at a meeting of the board of directors on September 25, 1951] in which the corporation approved, adopted and ratified the provisions contained in an agreement entered into on September 21, 1951, between the corporation as an employer and Max W. Goldberg, C. P. A., as trustee under an employees pension plan and trust for the benefit of non-union employees of the corporation who are performing services in an executive capacity, and it was further resolved, Benjamin R. Kent, as vice president, Abraham Sadin as secretary were authorized and directed to execute the said agreements in three counterparts and to affix the seal of the corporation to each such counterpart." The above was stipulated, but the record does not include a copy of any "agreement entered into on September 21, 1951" or later during the taxable year.

The petitioner, on November 27, 1951, delivered to Max W. Goldberg, trustee, a check for $21,111, representing the initial premium on the pension trust "adopted" at the directors' meetings of September 21 and 25, 1951. The record does not show how the amount of that check was determined. Goldberg endorsed the check to the order of Connecticut General Life Insurance Company and delivered it to that company on November 27, 1951.

The difference between the check for $21,111 and the $20,108.29 now claimed by the petitioner as a deduction was "disallowed as overstated" and the disallowance has been agreed to by the petitioner.

The president of the petitioner and Goldberg, as trustee, on December 1, 1951, executed a "Pension Plan and Trust Agreement of Barrett Timber and Dunnage Corporation," effective as of September 1, 1951. The record does not show that any similar instrument was executed at any earlier date.

The instrument executed on December 1, 1951, appears to be the original agreement and provides on page 4 that "[t]he 'trust agreement' is this agreement, and if the same be amended, this agreement as so amended." A participant is defined therein as "a qualified employee who is eligible to be and becomes a participant as provided in Article V of this agreement," and a pensioner is defined as "a participant who has been certified to the Trustee by the Pension Commit-

tee as one entitled to receive benefits hereunder." The plan contemplates that a contract or contracts will be entered into with a life insurance company (unnamed) to provide some or all of the benefits.

The pension committee was vested with powers, *inter alia*, to determine all questions relating to the eligibility of employees to become participants, to compute and determine the amounts of contributions which must be made to the trust by the company in order to provide the benefits to which the participants and their beneficiaries are entitled, to appoint an actuary to make any actuarial or other computations required in the administration of the plan, and to make and publish such rules for the regulation of the trust as are not inconsistent with the terms of the agreement. The record does not show when the pension committee was appointed, when it began to function, when it published any rules, when it first determined the eligibility of any employee to become a participant, or when it computed and determined the amount of the first contribution to be made to the trust by the petitioner, or that any of those events occurred in the taxable year ended September 30, 1951.

The agreement provides on page 9 that "[f]or every insurable participant there shall be obtained a contract providing for a death benefit," and "[f]or every uninsurable participant there shall be obtained a contract for the same premium that would have been paid for life insurance at standard rates, providing for a death benefit," each benefit being in the event of the participant's death before his normal retirement date.

Eligibility to participate depended upon length of employment as set forth in article V of the agreement which required that an eligible employee to become a participant had to file with the pension committee "his written application for participation wherein he shall signify his acceptance of the benefits and terms of the Trust and shall agree to execute such application and to take such physical examination and to supply truthfully and completely such information as may be required by any insurance company in connection with the issuance of any contract by which it is intended to obtain for such employee a benefit under this trust." The application had to be made on a form and within the time prescribed by the pension committee. The record does not show that any applications to participate were received from eligible employees or acted upon by the pension committee during the taxable year ended September 30, 1951.

Article VI is entitled "CONTRIBUTIONS—BY WHOM MADE AND IN WHAT AMOUNTS" and provides, *inter alia:*

> The company will make due and timely payments to the Trustee of such amounts of money as may be necessary from time to time, according to the certification of the Pension Committee, to provide the benefits to which participants and their beneficiaries are entitled under the Trust.

The record does not show that the pension committee certified to the petitioner that any amount of money was necessary to provide any benefits under the trust prior to October 1, 1951, or when it made a certification.

The Internal Revenue Service notified the petitioner on February 5, 1952, that the aforementioned pension plan and trust agreement was exempt from income tax under the provisions of section 165 (a) of the Internal Revenue Code.

Supplements to the pension plan and trust agreement were executed on January 22, 1952, and on April 14, 1952.

The record in this case does not show that events occurred during the taxable year which fixed a liability upon the petitioner to pay the $20,108.29. It might reasonably be inferred from the record that the petitioner did not incur in the taxable year any liability to pay the amount here in question or any amount as a contribution. The record fails to show when the events occurred under which the petitioner incurred such a liability or when it first became apparent that the petitioner would have to pay a contribution in any amount. The board of directors at its meetings on September 21 and 25, 1951, instructed the corporation to execute a pension plan and trust agreement, appointed a trustee and "approved, adopted and ratified the provisions contained in an agreement entered into on September 21, 1951, between the corporation as employer and Max W. Goldberg, C. P. A., as trustee" and further authorized and directed two of its officers "to execute the said agreements in three counterparts and to affix the seal of the corporation to each such counterpart." But if any agreement was actually entered into on September 21, 1951, or at any later time during the petitioner's taxable year, under the terms of which agreement the amount here in controversy might have been incurred as a liability, nevertheless the present record does not contain any such evidence.

The "Pension Plan and Trust Agreement of Barrett Timber and Dunnage Corporation" executed by the president of the petitioner and attested by its secretary, signed also by Goldberg, was entered into on December 1, 1951, the 62d day after the close of the taxable year involved herein. If there was any earlier instrument, the terms of such agreement are not in this record. The record fails to show that any amount was incurred in the taxable year by the petitioner as a liability under the terms set forth in the document executed on December 1, 1951, even if such a trust existed prior to December 1, 1951. This record might justify an affirmative finding that the various steps necessary under the pension trust agreement before there could be a computation and determination of the amount of the petitioner's initial contribution to the trust, could not have taken place prior to the close of the taxable year. Only a few days were available in that

year after the meetings of the board of directors of the petitioner on September 21 and 25 and, for example, a pension trust committee had to be set up, it had to formulate some rules and notify the employees, the employees then had to file applications and physical examinations had to take place, computations had to be made, and the pension committee had to certify the amount due from the petitioner as its initial contribution. The amount actually paid to the trustee by the petitioner on November 27 was apparently an estimate since both parties regard a portion of that amount as an overstatement of the amount due. Thus, it is not clear that even on November 27, 1951, the correct amount could have been determined.

The petitioner has failed to sustain its burden of proof to show that it incurred during its fiscal year ended September 30, 1951, a liability for a contribution of $20,108.29 or any other accruable liability to its pension trust within the meaning of section 23 (p) (1).

The case of *Dejay Stores* v. *Ryan*, 229 F. 2d 867, and *Tallman Tool & Machine Corporation*, 27 T. C. 372, are distinguishable. The court, in the former case, held that a trust existed prior to the execution of any trust instrument and the execution of a trust agreement could be related back 60 days like the payment of the contribution. It said: "[T]here is no reason, so far as we can see, why it [the appearance of a trust instrument] should be during the fiscal year, provided it is executed by the time the first contribution is made." Here the trust agreement had not been executed by the time the contribution in question was made, it was not executed until the 62d day after the close of the taxable year, and there is a failure of proof to show that any liability to make the contribution in controversy was incurred during the taxable year. The trust instrument in the *Tallman* case was executed within the taxable year. It recited the amount of the corporation's initial contribution to the trust and the taxpayer, within the taxable year, gave its demand promissory note to the trustee for most of that contribution.

*Decision will be entered for the respondent.*