C. Arthur Weaver Company, Incorporated v. Commissioner.
C. Arthur Weaver Co. v. Commissioner
Docket No. 95052.
United States Tax Court
T.C. Memo 1963-279; 1963 Tax Ct. Memo LEXIS 67; 22 T.C.M. (CCH) 1421; T.C.M. (RIA) 63279; October 10, 1963
C. Hobson Goddin, for the petitioner. Douglas O. Tice, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in petitioner's income tax for the year 1959 in the amount of $1,109.38. The issue for decision is whether a payment of $3,697.95 made by petitioner on March 14, 1960, as a contribution to a profit-sharing trust is deductible by petitioner for the taxable year 1959. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioner, a corporation incorporated under the laws of Virginia in 1956, filed its Federal corporate income tax returns for the year 1959, on an accrual basis, with the district director of internal revenue, Richmond, Virginia. From the date of its incorporation throughout all times here material petitioner's president has been C. Arthur Weaver. During 1959 petitioner had three employees; its president, C. Arthur Weaver; his secretary, Virginia B. Ewing, who had been employed by the corporation from the date that it was formed and had previously worked for C. Arthur Weaver Company, a propritorship; and a salesman, Walter Harrell. C. Arthur *70 Weaver and Virginia B. Ewing were both directors of petitioner in 1959, and the third director was Florence E. Weaver, who was the corporation's secretary. From the time Walter Harrell was first employed by petitioner in January 1957 through 1959, he was a salesman for the corporation. He was not an officer or director of petitioner. Sometime in 1958 petitioner's president began to examine certain employee profitsharing plans and talked to certain persons with respect to plans which other companies had adopted. Petitioner's president spoke with a representative of an insurance company with respect to profit-sharing plans and with a person in the investment planning field. The representative of the insurance company with whom petitioner's president had talked submitted a proposed plan but petitioner's president believed that the plan was too costly for a new corporation such as petitioner. Petitioner's president subsequently discussed with the other two employees of petitioner the fact that the insurance plan involved more money than the corporation should invest at the time and that he believed the corporation should look into the investment planning field. From time to time during *71 1958 and 1959 petitioner's president discussed with petitioner's other employees the possibility of some form of profit-sharing plan. Toward the end of 1959 petitioner's president decided that petitioner should proceed with the adoption of a profit-sharing plan. He was desirous of putting the plan into effect as soon as he felt petitioner was in a financial position to do so in order that his secretary, Virginia B. Ewing, would be able to retire under the plan at the age of 62. A special meeting of petitioner's board of directors was held at the office of the corporation at 3:00 p.m. on Monday, December 28, 1959, with all of the directors present in person. A waiver of notice of the time and place of the special meeting was signed by all directors and filed with the minutes. After reciting these facts the minutes of this meeting state as follows: C. Arthur Weaver, the corporation's president, presented to the Board a profit sharing agreement which would meet the requirements of the Internal Revenue Code and provide substantial employee benefits for those employees who had been with the corporation for a period of three years. Mr. Weaver stated that the plan provided employee incentive *72 and that the * * * [plan] would redound to the benefit of the corporation in added incentive of its employees and create an employee trust fund for the benefit of the employees upon retirement, or otherwise. The plan has been discussed in detail with the employees for some months and they have been enthusiastic in endorsing it. A copy of the plan as proposed is to be attached to and made a part of the minutes. Upon motion of Florence B. Weaver, the following resolutions were duly adopted: RESOLVED, that C. Arthur Weaver Company, Incorporated does hereby agree to and approve of a profit sharing plan for the benefit of its employees as outlined in accordance with the applicable provisions of the Internal Revenue Code; and RESOLVED FURTHER, that counsel for the corporation prepare and file immediately for approval with the Internal Revenue Service duly executed copies of such plan so that the corporation may participate in and contribute to said plan and take advantage of such tax deductions as allowed for the year 1959. There being no further business, upon motion the meeting was adjourned. No copy of any plan was in fact attached to the minutes and no written plan was *73 presented at the meeting. The minutes were signed by petitioner's secretary and approved by its president. The waiver of notice of special meeting stated that the purpose of this meeting was "to adopt a profit sharing plan." At the meeting on December 28, 1959, the board of directors discussed the points that had been considered during the various discussions in 1958 and 1959 with respect to profit-sharing plans, the amount of money the company would put into the fund, the type of investments, some to be growth investments and some more or less speculative, the number of years it would require for each employee's interest to become fully vested, and that since petitioner was a small organization its president would serve as trustee for the fund. Petitioner's president had certain rough notes with him at the meeting which he used as a basis for the discussion. On December 28, 1959, a letter from petitioner signed by its president, dated December 28, 1959, and entitled "Announcement and Description of Our Profit Sharing Retirement Plan" was handed to each of petitioner's employees. This letter stated in part as follows: Commencing with the year 1959, our company will set aside *74 part of its profits annually in order to build up retirement benefits for regular employees when they have been with us at least three years. The money contributed by the company will be put into a Trust for the exclusive benefit of such employees and will be allocated to each in accordance with his or her annual compensation and years of service. The Trustee will arrange for investment of the Trust money and pay to each participant the value of his interest in the Trust after he retires, or sooner in the event of total permanent disability. Should he die, his interest will be paid to his beneficiary. The details of the Plan are outlined more fully in the trust agreement which will always be available for your inspection at our office. Subsequent to the directors meeting of December 28, 1959, petitioner's president talked with petitioner's attorney concerning the preparation of a profit-sharing plan for approval by the Internal Revenue Service. Petitioner's attorney was seriously ill at the time and on January 17, 1960 he died. After the death of this attorney petitioner considered obtaining another attorney to draw up its profit-sharing plan. Petitioner's president had been *75 informed by certain persons engaged in investment planning work that drawing up a plan was a complicated matter and should be wisely and carefully done since it had to be approved by the Internal Revenue Service. On February 1, 1960, petitioner secured the services of another attorney to whom petitioner's president pointed out what he understood needed to be done and the attorney prepared a trust agreement which was executed on February 20, 1960, by petitioner and by petitioner's president, C. Arthur Weaver, as trustee. This trust agreement stated in part as follows: WHEREAS, The Company desires to promote in its employees the strongest interest in the successful operation of its business, loyalty to the Company, and the assurance that the employees will share in the prosperity of the enterprise, and WHEREAS, to attain that end, the Company has authorized the adoption of the profit sharing plan set forth herein, for the exclusive benefit of its employees eligible to participate in the plan, and WHEREAS, the form of this Trust Agreement was approved by the Board of Directors of the Company at a meeting duly held on December 28, 1959, and such Trust Agreement is intended to qualify *76 under Section 401 of the Internal Revenue Code. NOW THEREFORE, in consideration of the premises and the mutual covenants herein contained, it is agreed by and between the Company and the Trustee as follows: The Trust Agreement created in accordance with the terms hereof shall be known as Profit Sharing Trust for C. ARTHUR WEAVER COMPANY, INCORPORATED. The effective date of this Trust Agreement shall be January 1, 1960. * * *
ELIGIBLE EMPLOYEES All permanent employees employed for three years as of the date of the Trust Agreement establishing this Plan are immediately eligible. Permanent employees who begin employment after the date of the Trust agreement will become eligible to participate three years following the date of their employment. A permanent employee is one who normally works at least twenty hours per week at least six months per year. * * *
CONTRIBUTION BY COMPANY Following the close of the Company's fiscal year and prior to the date the Company is required to file its Federal Income Tax Return, the Company shall pay to the trustee its annual contribution based on the following schedule: An amount to be determined by the *77 Board of Directors of the Company before the close of the fiscal year of the Company on December 31st of each year, with written notice to be given to each participating employee of such amount to be contributed by the Company. However, in limitation, the Company shall not pay more than 15% of the aggregate compensation paid or accrued during the year to all eligible [employees] participating in this Plan. * * *
In no event shall the principal or income of this Trust be paid to or revert to the Company, or be used for any purpose whatsoever other than the exclusive benefit of the participants or their beneficiaries and the reasonable and necessary expense of the trust. ALLOCATION OF CONTRIBUTIONS At the commencement of this Trust the Company shall deliver to the Trustee a list of all employees eligible to participate herein, together with a statement of the amount of annual compensation payable by the Company to each. From time to time thereafter, as occasion shall arise, the Company shall promptly notify the Trustee in writing of all changes in the membership of such list of participating employees and in the annual compensation of such employees. The Trustee shall *78 open a separate bookkeeping account in the name of each participating employee and shall credit to each such account that portion of each contribution of the Company to this Trust to which the employee for whom such account is held shall be entitled, which amount shall be determined as follows: Each eligible employee shall be entitled to have credited to his account out of each contribution of the Company to this Trust such sum as shall bear the same ratio to the total amount of such comtribution as such employee's annual compensation shall then bear to the aggregate of the annual compensation of all participating employees. Allocation of contribution shall be based on compensation paid or accrued to an employee only during the time the employee is a participant of this Plan. At least annually the Trustee shall apportion, pro rata among the separate accounts of all participating employees, the net income earned by the Trust during the preceding period. VESTING OF EMYLOYEES INTEREST At the end of his first year in the plan, a Participant shall have a vested and nonforfeitable interest in 12.5% of the amount credited to his account. At the end of each additional full year of *79 continuous service, an additional 12.5% of the amount shall become vested until the maximum vested interest of 100% shall be reached at the end of eight years. However, in the event of eight years. However, in the event of death, total and permanent disability, retirement at age 65, or termination or discontinuance of the Plan, a participant's full interest of 100% shall immediately vest in him. * * *
DISTRIBUTION OF BENEFITS Each participant upon entry in the Plan, shall designate in writing filed with the Trustee a beneficiary or beneficiaries whom he may change from time to time by written notice. Distribution of a participant's vested interest shall be made as follows: Retirement: Upon reaching age 65 payment of the benefits of the fully vested interest of a participant may at his discretion commence whether such participant has retired or not. A participant shall be deemed to have attained age 65 at the end of the fiscal year following the date of his 65th birthday. When such participant eligible to retire continues employment with the consent of the Company, he will continue to receive his allocation of contributions and proportionate credit of income or loss to *80 the Trust Fund. If such Participant so desires and at his request, such fully vested benefits of the Participant may be used by the Trustee to purchase with the approval of the Participant, an annuity plan for such Participant. Total Permanent Disability: If a participant becomes totally and permanently disabled prior to his retirement, his interest in the Trust Fund shall immediately become fully vested and he will be entitled to receive the benefits on the next evaluation date. In the event of retirement due to reasons of health before reaching age 65, the vested interest shall not exceed the amount normally vested at that time. Total permanent disability will be certified by a Physician mutually agreeable to the Company and the participating individual. Death: Upon a participant's death his interest in the Trust Fund shall immediately become fully vested and will be evaluated and paid on the next evaluation date following the Participant's death, in this form of a total single payment, to the participant's beneficiary, is designated by him, or his estate if no beneficiary shall be so designated. Severance of Employment: Upon voluntary or involuntary severance of employment, *81 a Participant's vested interest shall be evaluated and paid as a total single payment on the next evaluation date, except a Participant who is dismissed from his employment because of dishonesty, disloyalty, or misconduct forfeits his entire interest under this Trust, and is not entitled to any benefits. When a Participant's employment has been severed his non-vested interest in the Trust Fund shall be forfeited and shall be proportionately credited to the secounts of the remaining Participants on the same ratio as the Participant's interest relates to the whole of the Company's total contributions allocated to such accounts. Termination or Discontinuance of the Plan: If the Trust is terminated or discontinued the interest of all participants immediately vests in full and their interest in the Fund will be evaluated and paid to them on the next evaluation date. INVESTMENT OF TRUST FUND 1. All contributions paid by the Company to the Trustee and all income or other property derived therefrom shall be held and administered by the Trustee as a single Trust Fund except as otherwise provided in this Agreement. 2. In the investment and reinvestment of the Trust Fund, the Trustee *82 shall not be restricted by statutes governing the legal investment of trust funds and he may invest in bonds, common and preferred stocks, mutual funds and other securities including shares of open-end management type investment companies as defined in the Investment Company Act of 1940. Without limitation of the foregoing, the Trustee is specifically authorized to limit investment at his own discretion, to the shares of such investment companies. 3. The Trustee shall generally exercise any of the powers of an owner with respect to securities or property held for the Trust Fund. 4. The Trustee shall not be liable for any losses which may be incurred upon the investments of the Trust Fund except to the extent that such losses shall have been caused by bad faith. * * *
AMENDNENT AND TERMINATION The Company shall have the right at any time, by an instrument in writing duly executed and acknowledged and delivered to the Trustee to modify, alter or amend this instrument in whole or in part provided, however, that the duties, powers and liability of the Trustee shall not be substantially increased without the Trustee's written consent; and provided further, that the amount which *83 at the time of any such modification, alteration or amendment shall appear as a credit in the account of each participant shall not be affected thereby; and provided, further, that no such amendment shall have the effect of revesting in the Company any part of the principal or income of the Trust. The Company has established the Plan with the bona fide intention that it will be able to make its contribution indefinitely, but the Company is not and shall not be under any obligation or liability whatsoever to continue its contributions or to maintain the Plan for any given length of time and may, in its sole and absolute discretion discontinue such contributions or terminate the Plan at any time without any liability whatsoever for such discontinuance or termination. The Plan and Trust hereby created shall terminate upon the happening of either of the following events: (a) Delivery to the Trustee of a notice of termination executed by the Company specifying the date as of which the Plan and Trust shall terminate. (b) Adjudication of the Company as a Bankrupt or general assignment by the Company to or for the benefit of creditors or dissolution of the company. Upon such termination *84 of the Plan and Trust, after payment of all expenses and proportional adjustments of accounts to reflect such expenses, fund losses or profits and re-allocations to the participants' accounts, the interest of each participant will be evaluated and paid him on the next evaluation date. On March 10, 1960, petitioner presented the profit-sharing trust agreement executed on February 20, 1960, to the district director of internal revenue in Richmond, Virginia for a determination of whether this trust qualified under section 401(a) of the Internal Revenue Code of 1954. On March 11, 1960, the district director addressed a letter to petitioner in which he informed petitioner that after consideration of the trust indenture and other relevant information submitted with the request for a determination, his office was of the opinion that the plan met the requirements of section 401(a) of the Internal Revenue Code of 1954 and the trust established thereunder was entitled to exemption under the provisions of section 501(a). On the same date a letter was addressed by the district director to C. Arthur Weaver, Trustee, in which the trustee was informed *85 that the district director's office had determined that the plan met the requirements of section 401(a) and that the trust was entitled to exemption under section 501(a). On March 14, 1960, petitioner made a payment to the profit-sharing trust in the amount of $3,697.95. Petitioner on its income tax return for the calendar year 1959 deducted the amount as a contribution to a profit-sharing plan. Respondent in his notice of deficiency disallowed the deduction for a contribution to a profit-sharing plan with the following explanation: The deduction of $3,697.95 claimed for contributions to a profit-sharing plan has been disallowed since your taxable year 1959 did not end within or with a taxable year of the profit-sharing trust as required in Section 404(a)(3)(A) of the Internal Revenue Code of 1954. The trust agreement was not executed until February 20, 1960, and the effective date was stated to be January 1, 1960. Therefore, 1960 is the first taxable year of the profit-sharing trust. Opinion Section 404 of the Internal Revenue Code of 1954[1] sets forth the circumstances under which contributions paid by an employer to a profit-sharing *86 plan are deductible. Insofar as here applicable, this section provides that such contributions are not deductible under section 162 relating to trade or business expenses, but if they satisfy the conditions of that section shall be deductible in the taxable year when paid (or for a taxpayer on the accrual basis deemed to have been paid) if such taxable year ends within or with a taxable year of the trust with respect to which the trust is one described in section 401(a) and therefore exempt under section 501(a). [2]
*87 Both parties recognize that since petitioner filed its 1959 return on an accrual basis, its payment on March 14, 1960, of $3,697.95 is deemed to have been made on December 31, 1959, if it has otherwise complied with the provisions of section 404. Tallman Tool & Machine Corporation, 27 T.C. 372 (1956), and the portion of DeJay Stores v. Ryan, 229 F.2d 867 (C.A. 2, 1956), quoted therein. The controversy centers on whether an appropriate trust existed at December 31, 1959, and whether the amount paid by petitioner on March 14, 1960, was a proper accrual on or before December 31, 1959, under the provisions of section 162. The trust instrument which was signed on February 20, 1960, and approved by the Internal Revenue Service on March 11, 1960, as meeting the requirements of section 401(a) and being exempt under section 501(a) states that its effective date is January 1, 1960. It is petitioner's position, however, that there existed at December 31, 1959, an oral trust valid under Virginia law ( Young v. Holland, 117 Va. 433, 84 S.E. 637 (1915)), which met the provisions of section 401(a) and was exempt under section 501(a), so that the payment *88 made on March 14, 1960, was properly deemed to have accrued as of December 31, 1959, and was therefore a proper deduction in computing its taxable income for the calendar year 1959. Respondent agrees that under Virginia law oral trusts are recognized as valid but points out that the standard for proving the existence of an oral trust demands clear and unequivocal evidence. Russell's Ex'rs v. Passmore, 127 Va. 476, 103 S.E. 652 (1920). Respondent directs attention to the following language in Woods v. Stull, 182 Va. 888, 30 S.E. 2d 675, 682 (1944): In order to constitute an express trust there must be either explicit language to that effect or circumstances which show with reasonable certainty that a trust was intended to be created. The declaration must be reasonably certain in its material terms. If the language is so vague, indefinite, or equivocal that any one of the elements is left in uncertainty the trust must fail. 65 C.J. Trusts, secs. 21 and 50. Respondent takes the position that petitioner has failed to establish the existence of a valid oral trust as of December 31, 1959. The evidence here shows that as of December 28, 1959, petitioner's directors *89 had passed a resolution agreeing to and approving a profit-sharing plan for the benefit of its employees and had announced this fact to its employees. The details of the plan are not set forth in the minutes of the directors meeting. The testimony of petitioner's witnesses was that a plan had been approved under which a trust with petitioner's president as trustee would be created and a portion of the company's profits would be paid thereto to be invested in stock for the benefit of petitioner's employees. The testimony is not precise enough to show clearly the existence of an oral trust at December 31, 1959, and certainly not sufficiently precise to show the existence of a trust which met the requirements of section 401(a). There is nothing to indicate to what extent the terms of the plan approved on December 28, 1959 (or that petitioner agreed to approve on that date), coincided with the detailed provisions of the trust agreement executed on February 20, 1960. Petitioner had the trust instrument that was finally adopted drafted by a lawyer. The provisions were detailed, and there is no showing of an agreement to the various detailed provisions at the directors meeting on December 28, 1959, or *90 any time prior to December 31, 1959. From the evidence all that petitioner has established is that its directors resolved on December 28, 1959, to enter into a profit-sharing plan in the form of an investment trust with petitioner's president as trustee. There is a distinction between a resolution to enter into a trust agreement and the entry into the trust agreement with specific terms. The evidence in this case fails to establish that as of December 31, 1959, petitioner had in existence a profit-sharing trust to which the amount of $3,697.95 could be accrued as a payment, and, therefore, petitioner has failed to establish that it is entitled to deduct that amount in 1959 as a payment to a profit-sharing trust. The Court in DeJay Stores v. Ryan, supra, relied on by petitioner, recognized that it was necessary for the trust, even though oral, to be in existence and pointed out that in that case before the close of the taxable year involved there was "a complete agreement upon all the terms on which the trustee should hold the res." In the instant case petitioner has failed to show that a similar situation existed. The fact that in the instant case no complete agreement *91 had been reached as to the terms on which the trustee was to hold the trust res is demonstrated by the very general outline of a plan in the minutes of the directors' meeting of December 28, 1959, and the announcement to employees on that date as compared to the detailed provisions of the written trust executed on February 20, 1960. Neither of the directors of petitioner who testified at the trial was able to point to any more specific details of terms agreed upon on December 28, 1959, than the general statements in the minutes except that it was agreed that petitioner's president would act as trustee. The evidence does not show the necessary agreement to definite terms on December 28, 1959, to constitute an oral trust. Chesapeake Corporation of Virginia, 17 T.C. 668 (1951). See also Abingdon Potteries, Inc., 19 T.C. 23 (1952); Barrett Timber & Dunnage Corporation, 29 T.C. 76, 80 (1957); and West Virginia Steel Corporation, 34 T.C. 851 (1960). It was perhaps petitioner's intention on December 28, 1959, to come to agreement as to the terms of the trust and to execute the trust instrument before the end of 1959. It may be, as explained *92 by petitioner's president, that the reason the trust agreement was not executed prior to February 20, 1960, was because of the serious illness during the last week of 1959 and death on January 17, 1960, of petitioner's attorney. However, the very fact that petitioner's directors could not draw up a trust agreement reciting the terms of the trust during the last 3 days of 1959 without the aid of petitioner's attorney is further indication that full agreement as to the terms of the trust had not been reached on December 28, 1959. Petitioner has failed to establish that it is entitled to the claimed deduction of $3,697.95 for payment to a profit-sharing trust in its taxable year 1959. Decision will be entered for respondent. Footnotes
1. All references are to the Internal Revenue Code of 1954 unless otherwise indicated. Sec. 404(a) General Rule. - If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for the production of income) but if they satisfy the conditions of either of such sections, they shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year: * * *
(3) Stock bonus and profit-sharing trusts. - (A) Limits on deductible contributions. - In the taxable year when paid, if the contributions are paid into a stock bonus or profit-sharing trust, and if such taxable year ends within or with a taxable year of the trust with respect to which the trust is exempt under section 501(a), in an amount not in excess of 15 percent of the compensation otherwise paid or accrued during the taxable year to all employees under the stock bonus or profit-sharing plan. * * *
(6) Taxpayers on accrual basis. - For purposes of paragraphs (1), (2), and (3), a taxpayer on the accrual basis shall be deemed to have made a payment on the last day of the year of accrual if the payment is on account of such taxable year and is made not later than the time prescribed by law for filing the return for such taxable year (including extensions thereof). ↩
2. Sec. 501(a) Exemption from Taxation. - An organization described in subsection (c) or (d) or section 401(a)↩ shall be exempt from taxation under this subtitle unless such exemption is denied under section 502, 503, or 504.