*Decision will be entered under Rule 50.*

TALLMAN TOOL & MACHINE CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 60626. Filed November 27, 1956.

---

*Charles S. Wilcox, Esq.*, for the petitioner.
*John Potts Barnes, Esq.*, for the respondent.

OPINION.

Murdock, *Judge:* The Commissioner determined a deficiency of $15,731.20 in the petitioner's income tax for its fiscal year ended September 30, 1952. The petitioner contests the Commissioner's disallowance of $22,520 claimed as a deduction in the taxable year in question as a contribution to a profit-sharing plan and trust.

The facts have been stipulated.

The petitioner is a New York corporation doing business in Rochester, New York. It filed its Federal income tax returns on an accrual basis and has a fiscal year ending September 30.

The profit-sharing plan and trust was set forth in an instrument executed by the petitioner and the trustee under seal on September 30, 1952, which was stated to be its effective date. The instrument recited the payment of the $22,520 as the corporation's initial contribution to the trust.

The petitioner also executed its $20,000 demand promissory note and delivered it to the Central Trust Company, Rochester, New York, the corporate trustee, on September 30, 1952. The note contained no restrictions, direct or indirect, as to its negotiability. No collateral was deposited. The petitioner had sufficient cash on hand to pay the note on September 30, 1952, and at all times thereafter until the note was paid.

The $20,000 note was paid in full in cash on October 30, 1952, when $2,520 was also paid.

The Commissioner's disallowance of the claimed deduction is on the ground that, for the purposes of section 165 (a) of the Internal Revenue Code of 1939, the profit-sharing trust did not have any existence on September 30, 1952, the last day of its fiscal year, because the demand note could not legally be regarded as its corpus, and a trust without a corpus is no trust at all. Both parties agree that the law of New York is controlling for the purpose of determining whether there is a valid trust under these circumstances and contend that the New York law sustains their respective positions. The Commissioner further contends that this defect could not be cured by the payment within the 60-day period provided in section 23 (p) (1) (E) because that section is dealing with annual payments to existing trusts and not the creation of a trust.

The law of New York as it relates to the statute here in question has been recently stated by Judge Learned Hand in *Dejay Stores* v. *Ryan*, 229 F. 2d 867, where the existence and validity of a pension trust was in issue because the trust instrument had been executed after the

close of the tax year for which the deduction was sought. The court said:

The argument is that the relevant sections[1] require by implication that the trust be set up within the fiscal year, and that it is only the payment of the contribution that § 23 (p) (1) (E) allows to be made within sixty days thereafter. We can find nothing in either section or in the Regulations[2] that so requires: the word used throughout the two sections is "trust," or "pension trust," except that under § 165 (a) (2) the phrase, "trust instrument" once appears, and although that no doubt presupposes that such a document shall at some stage appear, there is no reason, so far as we can see, why it should be during the fiscal year, provided it is executed by the time the first contribution is made. Section 23 (p) (1) (E) declares that a payment within sixty days after the end of the year "shall be deemed" to be made within "the taxable year", when the employer keeps its books on an "accrual" basis; and we can see no reason, either express or implied, why it should be necessary that the "trust instrument" should not have the same extended period. This does not mean that the "trust" itself must not be set up within the fiscal year; we assume that it must; but in the case at bar every element of a trust came into existence before February first, if the contribution "be deemed" to have been paid on January 31st, as the Act provided. There was (1) a trustee, (2) a res, (3) a transfer of the res to the trustee, (4) and a complete agreement upon all the terms on which the trustee should hold the res. What else was necessary we do not understand. It is true that under the law of New York, where the contract was made, a contract to make a trust is "void," when it is not in writing;[3] but the transaction had passed beyond a contract, if we assume, as we must, that the contribution was to be treated as though it had in fact been paid on January 31st. It made no difference that the terms on which the trustee was to hold the res were oral, for the law of New York does not make "void" an executed trust,[4] and the "trust instrument" however eventually necessary, was not one of the constituents of the "trust."

[1] §§ 23 (p) (1) and 165 (o) [*sic*] Title 26 U. S. C.
[2] Regulations 111 §§ 29 (p) and 165.
[3] § 31 (8), N. Y. Personal Property Law, McK. Consol. Laws, c. 45.
[4] Blanco v. Velez, 295 N. Y. 224, 66 N. E. 2d 171.

There is no question here as to the existence of the trust except for the Commissioner's position that there was no trust res. The court in the quoted case has found that it is consonant with New York law that the trust may validly exist when the initial payment is made within the 60 days provided in section 23 (p) (1) (E). See also *Crow-Burlingame Co.*, 15 T. C. 738, 748; *555, Inc.*, 15 T. C. 671, 679, expressing a similar view, as to the effectiveness of a trust res or corpus being supplied by payment within the 60-day grace period.

The Commissioner makes no contention that the deduction should be denied because "payment" was not made under section 23 (p) (1) (E) and it would be an anomalous situation if the $20,000 cash payment on the note could be related back to effect a "payment" to a trust and at the same time be the very medium for declaring the trust to be nonexistent.

The Commissioner attempts to make much of the fact that the cited cases were for prior taxable years when there was an additional grace period to make such plans conform. But the question of whether there was a trust is basic and section 23 (p) (1) (E) was present in the statute since the original 1942 law. Moreover, the additional grace period dealt with conformance with subsections 165 (a) (3), (4), (5), and (6), which are not related to the present problem of whether there was a trust corpus.

The Commissioner, at about the time he sent the notice of deficiency to the petitioner, promulgated Revenue Ruling 640 (1955–2 C. B. 231) in which he held that if local law regarded promises under seal as binding without consideration, a promise to make contributions would constitute the corpus of a profit-sharing trust. New York law does not so provide with regard to instruments under seal, but it does provide that "Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value." (N. Y. Negotiable Instruments Law sec. 50.) The petitioner gave more than a promise to make contributions; it delivered a negotiable instrument which, on the present record, was issued for valuable consideration.

The trust here does not lack a corpus and was a valid and existing trust on September 30, 1952. The petitioner is entitled to the deduction in question both because of the existence of the trust corpus under New York law and under the rationale of the Commissioner's recent rulings that the corpus is supplied if the promise to pay is supported by consideration.

This disposition eliminates the need for consideration of the Commissioner's further contention that the petitioner's employees did not have nonforfeitable rights in the contributions under section 23 (p) (1) (D) and that that section affords no basis for the deduction.

*Decision will be entered under Rule 50.*