CATAWBA INDUSTRIAL RUBBER CO., INC., PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4046-74.    Filed September 9, 1975.

*Romulus S. Watson,* for the petitioner.
*Wright Tisdale, Jr.,* for the respondent.

OPINION

DRENNEN; *Judge:* Respondent determined a deficiency in petitioner's corporate income tax for its fiscal year ending April 30, 1972, in the amount of $9,484.45. The issues for decision are: (1) Whether petitioner established a profit-sharing trust, qualified under section 401(a), I.R.C. 1954,[1] by April 30, 1972, the final day of its taxable year 1972; and (2) whether the contribution of $19,759.25 made by petitioner to the profit-sharing trust on July 13, 1972, was deductible on petitioner's corporate income tax return for its taxable year 1972.

All of the facts have been stipulated and the stipulation of facts together with the exhibits attached thereto are hereby incorporated by reference. Only the facts necessary for an understanding of this opinion are herein summarized.

Petitioner Catawba Industrial Rubber Co., Inc. (sometimes referred to as petitioner or Catawba), is a North Carolina corporation whose office is located in Charlotte, N.C., and which is engaged in the business of sales of rubber and related products. An accrual basis taxpayer, petitioner reports its taxable income based on a fiscal year ending April 30.

---

[1] All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in issue.

Petitioner filed its tax return, Form 1120, for the taxable year ending April 30, 1972, with the Southeast Service Center at Memphis, Tenn. On line 24 of said return $19,759.25 was claimed as a deductible contribution to a profit-sharing plan. Respondent determined that the claimed deduction was not allowable for petitioner's taxable year ended April 30, 1972, for the stated reason that no valid profit-sharing plan was in existence as of April 30, 1972, and no written trust instrument, which precluded the prohibited diversion of funds, had been executed as of April 30, 1972. Accordingly, respondent issued a notice of deficiency on March 29, 1974, in the amount of $9,484.45.

On April 25, 1972, the board of directors of Catawba held a special meeting to consider the establishment of a profit-sharing plan. The minutes of that meeting contain the following recitations:

> The directors of the corporation have for some period of time considered the feasibility of establishing a Profit-Sharing Plan and several discussions have been had concerning same. These discussions have been formalized and documented in a Corporate Profit-Sharing Plan which was exhibited to all directors and studied by the said directors.

> The board of directors unanimously approved the plan and instructed all appropriate parties to take what action necessary in order to have this plan duly qualified as provided under the appropriate sections of the Internal Revenue Code.

> It was brought to the attention of the board of directors that it was necessary to execute a Trust in connection with this Corporate Profit-Sharing Plan, said Trust to have certain administrative functions in connection with the plan. The Trust document was discussed and reviewed by all directors and the directors unanimously approved the provisions of the Trust and in addition authorized the disbursement of $100.00 to said Trust in order to make the Trust operative.

> It was also pointed out to the board of directors that a disbursement equal to approximately 15% of the gross annual payroll out of the profits of the corporation was to be made to the Trust each year. The directors unanimously approved a resolution directing the corporate officers to make the appropriate disbursement to the Trust as provided by the Corporate Profit-Sharing Plan.

The trust agreement referred to in the April 25 meeting was finalized and executed by the appropriate parties on June 14, 1972, as was the written corporate profit-sharing plan of Catawba. That same day an application for determination that the plan and trust qualified under section 401(a), together with supporting documents and information, was forwarded to the District Director, Internal Revenue Service. In the application it

was stated that the plan was adopted April 25, 1972, with an effective date of April 30, 1972, and that the trust was executed April 28, 1972. On May 30, 1972, the profit-sharing plan was communicated to petitioner's employees by petitioner in writing.

Petitioner received a favorable determination letter from the District Director of Internal Revenue, Greensboro, N.C., dated July 3, 1972. That determination letter specified June 14, 1972, as the adoption date of the plan and thus the date of qualification. That date was based upon the date of the execution of the trust instrument. Despite the authorization given at the April 25 directors meeting, petitioner did not make its first contribution to the profit-sharing trust until July 13, 1972, when it deposited $19,759.25 into a bank account, opened that same day, in the name of the trust.

No other relevant facts were stipulated and we must assume that petitioner and its officers and directors took no additional actions toward creating the profit-sharing trust prior to April 30, 1972. We have no evidence of what was specifically considered by the board of directors at its meeting on April 25, 1972. The preamble in the trust agreement does recite that the "Board of Directors has adopted this Trust Agreement." It also recites that "the Company has delivered to the Trustees $100.00 to be applied to the initial profit-sharing contribution," which appears to be inconsistent with the stipulation.

Based on the recited facts the questions to be determined are first, whether a profit-sharing trust, qualified under section 401(a), was in existence as of April 30, 1972; and second, whether the contribution of $19,759.25 made by petitioner to the profit-sharing trust on July 13, 1972, was deductible by petitioner for its taxable year ended April 30, 1972.

Section 404(a), in pertinent part, provides that if contributions are paid by an employer to a profit-sharing plan on account of an employee, such contributions shall be deductible under this section subject to the limitations following. Paragraph (3)(A) provides that such contributions shall be deductible in the taxable year when paid if they are paid into a profit-sharing trust, and if such taxable year ends within or with a taxable year of the trust with respect to which the trust is exempt under section 501(a), in an amount not in excess of 15 percent of the compensation otherwise paid or accrued during the taxable year to all employees under the profit-sharing plan. Paragraph (6), however,

makes an exception to the above rule, providing that for purposes of paragraph (3), a taxpayer on the accrual basis shall be deemed to have made a payment on the last day of the year of accrual if the payment is on account of such taxable year and is made not later than the time prescribed by law for filing the return for such taxable year.

Section 501(a) provides in the only part applicable here, that an organization described in section 401(a) shall be exempt from taxation under this subtitle, with certain exceptions not relevant here.

Under these rather convoluted provisions of the law, we must determine whether petitioner's contribution was paid to a profit-sharing trust which qualified under section 401(a) (and was thus exempt under section 501(a)) for its taxable year in which petitioner's taxable year 1972 ends, as required by section 404(a)(3), see *555, Inc.,* 15 T.C. 671 (1950); *Crow-Burlingame Co.,* 15 T.C. 738 (1950); *Dejay Stores v. Ryan,* 229 F. 2d 867 (2d Cir. 1956); *Tallman Tool & Machine Corp.,* 27 T.C. 372 (1956), and also, since petitioner's contribution was not paid within its taxable year ending April 30, 1972, whether the contribution was an accruable item for petitioner in its fiscal year 1972, so it can be considered deemed paid on April 30, 1972, under section 404(6), see *Abingdon Potteries, Inc.,* 19 T.C. 23 (1952); *Barrett Timber & Dunnage Corp.,* 29 T.C. 76 (1957).

Section 401(a) provides that a United States trust forming part of a profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust if the various requirements set forth therein are met. The first requirement, set out in paragraph (1), is that contributions are made by an employer entitled to deduct his contributions under section 404(a)(3)(B) for the purpose of distributing to such employees and their beneficiaries the corpus and income of the trust fund in accordance with such plan. Paragraph (2) provides, "if under the trust instrument it is impossible," prior to satisfaction of all liabilities with respect to employees and beneficiaries, for any of the corpus or income of the trust to be used for purposes other than for the exclusive benefit of the employees and beneficiaries.

Paragraph (3) requires that certain specified percentages or classifications of the employees of the employer be entitled to benefits under the plan, and paragraph (4) requires that the

benefits do not discriminate in favor of employees who are officers, shareholders, supervisory, or highly compensated. The remainder of the paragraphs under section 401(a) relate to acceptable classifications for coverage purposes and deal primarily with requirements with respect to employee-participants' rights under the plan and trust.

While, in our opinion, section 401(a) clearly contemplates the existence of a trust within the employer's taxable year in which deductions for contributions are claimed, the section does not specify what will qualify as a trust for purposes of the section or how such a trust may be given life. Both the courts and the taxing authority agree that there must be a trust in existence within the taxable year to allow the deduction, but there are divergent views with respect to what actions must be taken to create a trust for these purposes. See the cases cited above; also *Tavannes Watch Co. v. Commissioner*, 176 F. 2d 211 (2d Cir. 1949), revg. 10 T.C. 544 (1948); *Hill York Corp. v. United States*, an unreported case (S.D. Fla. 1964, 14 AFTR 2d 5160, 64-2 USTC par. 9654); secs. 1.401-1(a)(2) and (3) and 1.401-2(a), Income Tax Regs.; Rev. Rul. 67-419, 1957-2 C.B. 264; Rev. Rul. 69-231, 1961-1 C.B. 118; Rev. Rul. 69-421, 1969-2 C.B. 59, 63 (part 2, par. (f)). We need not adopt one view or another in deciding this case because we conclude that the evidence before us does not support a finding that a trust was created by petitioner before April 30, 1972, under the views expressed in any of the above authorities.[2]

---

[2] Sec. 1.401-1(a)(2), Income Tax Regs., provides that a qualified profit-sharing plan is a definite written program and arrangement which is communicated to the employees. Sec. 1.401-2(a)(2), Income Tax Regs., provides that as used in sec. 401(a)(2), the phrase "if under the trust instrument it is impossible" means that the trust instrument must definitely and affirmatively make it impossible for the nonexempt diversion or use to occur. Respondent takes the position in Rev. Rul. 69-231, 1969-1 C.B. 118, and Rev. Rul. 69-421, 1969-2 C.B. 59, 63, and argues here, that a written trust agreement complying with the requirements of the law and regulations must be executed before the end of the taxable year to permit deduction of a contribution in that year.

The Court of Appeals for the Second Circuit in *Dejay Stores v. Ryan*, 229 F. 2d 867 (2d Cir. 1956), and the District Court for the Southern District of Florida in *Hill York Corp. v. United States*, an unreported case (1964, 14 AFTR 2d 5160, 64-2 USTC par. 9654), while recognizing that a valid trust must be in existence during the taxable year, could find nothing in the law that required that the trust be evidenced by a written agreement executed before the end of the taxable year, and held that if the trust instrument was executed before the contribution was made within the grace period of sec. 404(a)(6), that satisfied the requirements of the law.

The writer believes support for both of these conflicting positions can be found in the law and the purposes for which it was enacted and that it presents a policy question which should probably be answered by Congress. Since the requirements for qualification of a trust are so complex, it can be argued that it is impossible to determine whether a qualified trust exists until its terms are reduced to writing and executed. On the other hand, if the

The only action taken by petitioner with regard to establishment of its profit-sharing plan prior to May 1, 1972, of which we are aware, is that recited in the minutes of the directors meeting on April 25, 1972, which we have set out in full above. Accepting those minutes at face value, we find that the directors considered a documented profit-sharing plan, approved the plan, and instructed all appropriate parties to take what action was necessary to have the plan qualified under the Internal Revenue Code. We do not know what this plan provided; the only document we have is a written plan executed on June 14, 1972.

We also find from the minutes that it was necessary to execute a trust in connection with the plan and that a trust document was reviewed and approved by the directors and a $100 disbursement to the trust was authorized. Here, again, we do not know just what trust document was considered by the directors, who the trustees were to be, or whether the trust was required to conform to section 401(a). It is stipulated that the trust agreement mentioned in the minutes of the directors meeting was finalized and signed on June 14, 1972, and a copy of that document is in evidence. We assume, however, that changes were made in the document or it could have been signed at the meeting. Also, there is nothing to indicate that the trustees accepted the trust prior to executing the agreement. Furthermore, while the minutes recognize the necessity of establishing a trust corpus, it is stipulated that no contribution was made to the trust until July 13, 1973.[3]

While it can be argued that it is clear from the minutes that the directors intended to create a trust at their meeting on April 30, 1972, and that their failure to take the necessary steps to do so before April 30 is a technical omission which should not deprive petitioner of its deduction for fiscal 1972, it can be

---

terms of the trust are reduced to writing and executed prior to the time an otherwise deductible contribution is made to it, and those terms meet the qualification requirements, there would be no possibility that the funds could be used for a nonexempt purpose, and it can be argued that allowing the deduction under such circumstances conforms with the intent of Congress in providing a grace period for making the contribution in sec. 404(a)(6) and a grace period for amending a plan to meet the requirements of sec. 401(a)(3), (4), (5), and (6) in sec. 401(b). See *Aero Rental,* 64 T.C. 331 (1975).

[3] Respondent agrees that this fact alone would not negative the existence of a qualified trust in petitioner's fiscal year 1972, if a contribution was made to an existing trust within the grace period provided in sec. 404(a)(6) and that contribution can be "deemed made" on Apr. 30, 1972, under that section. Rev. Rul. 57-419, 1957-2 C.B. 264. See also *Dejay Stores, Inc. v. Ryan, supra; Tallman Tool & Machine Corp.,* 27 T.C. 372 (1956).

argued with equal force that all the minutes indicate is that the directors intended to create a trust at some future time when all parties concerned agreed on the terms thereof. The requirements of section 401(a) for a qualified trust are also quite technical and stringent, and we believe some definitive action to create a trust that would be binding on the parties to the trust must be taken to bring such a trust into existence. We believe this is recognized in all the cases cited above.

In *555, Inc.* and *Crow-Burlingame, Co.,* both *supra,* tentative trust agreements were executed before the end of the taxable year. In *Abingdon Potteries, Inc., supra,* this Court did not recognize the creation of a trust by board action alone. In *Dejay Stores v. Ryan, supra,* the board of directors, before the end of the year, had adopted a "Plan" in complete detail, had chosen a trustee and agreed with the trustee on all terms of the trust agreement, and had accrued on its books a contribution to the trust for that year. In *Tallman Tool & Machine Corp., supra,* a trust agreement was executed on the last day of the year. In *Barrett Timber & Dunnage Corp., supra,* this Court did not recognize the existence of a trust in the taxable year, even though the plan and trust agreement had been submitted to and approved by the board of directors, and a trustee had been appointed and accepted, before the end of the year. The facts in *Hill York Corp. v. United States, supra,* were very similar to those in *Dejay Stores,* and there was a different question involved in *Tavannes Watch Co. v. Commissioner, supra.*

Accordingly, we conclude that petitioner's profit-sharing trust was not in existence on April 30, 1972. Since section 404(a) allows the deduction only if the contribution is paid (or accrued) to a profit-sharing trust which is qualified for its taxable year in which petitioner's taxable year ends, it makes no difference whether petitioner's contribution on July 13, 1972, could be related back to April 30, 1972, under section 404(a)(6), because the profit-sharing trust could not have a taxable year beginning prior to its creation.

Petitioner, relies on section 401(b) in arguing that since the profit-sharing trust was established and met all the requirements of section 401(a) within 2 months and 15 days after the close of its taxable year on April 30, 1972, the trust must be deemed qualified as of April 30, 1972. Section 401(b) provides that a profit-sharing plan shall be considered as satisfying the require-

ments of paragraphs (3), (4), (5), and (6) of subsection (a) for the period beginning on the date on which it was put into effect and ending with the 15th day of the third month following the close of the taxable year of the employer in which the plan was put into effect, if all provisions of the plan which are necessary to satisfy such requirements are in effect by the end of such period, etc. We believe petitioner's reliance on this section is misplaced. Section 401(b) grants a grace period for amending plans to conform to the requirements of paragraphs (3), (4), (5), and (6) of section 401(a); it says nothing about paragraphs (1) and (2). Paragraph (1) specifically requires that the purpose of the trust to which contributions are made is to distribute to employees the funds accumulated in the trust in accordance with a plan. Paragraph (2) requires that "under the trust instrument" it is impossible for the funds to be diverted for other uses. Since section 401(b) does not refer to paragraphs (1) and (2), it does not apply to permit retroactive modification of the purpose of the trust and the terms of the "trust instrument" to meet the requirements of those paragraphs. It thus seems mandatory that a trust meeting those conditions be in existence during the taxable year and qualifying life cannot be retroactively breathed into it through the medium of section 401(b). Petitioner cites *Dejay Stores, Tallman, 555, Inc.,* and *Crow-Burlingame,* all *supra,* in support of its argument. These cases dealt with section 23(p)(1)(E) of the 1939 Code, which was the forerunner of section 404(a)(6), not section 401(b).[4]

For sake of completeness, we have also considered whether petitioner's contribution to the trust on July 13, 1972, can be "deemed" to have been made on April 30, 1972, under section 404(a)(6). We conclude that it cannot, and for this additional reason petitioner may not deduct the contribution for its fiscal year ending April 30, 1972.

Section 404(a)(6) provides that for purposes of paragraphs (1), (2), and (3), a taxpayer on the accrual basis shall be deemed to have made a payment on the last day of the year of accrual if the payment is on account of such taxable year and is made not later than the time prescribed by law for filing the return for such taxable year. Petitioner was an accrual basis taxpayer and its pay-

---

[4] In *Aero Rental,* 64 T.C. 331 (1975), this Court considered the application of sec. 401(b), but in the context of amendments to a plan to make it qualify, not in the context of creating a trust, as it is sought to be used by petitioner here.

ment was made before its return for fiscal 1972 was due. So, the only question is whether petitioner's fiscal year 1972 was "the year of accrual" for this item.

In *Abingdon Potteries, Inc., supra,* and *Barrett Timber & Dunnage Corp., supra,* this Court held that section 23(p)(1)(E) of the 1939 Code, the predecessor of section 404(a)(6), provided an exception for the accrual basis taxpayer to the requirement that the deduction be taken in the year paid only if the payment was properly accruable in the prior year. See also sec. 1.404(a)-1(c), Income Tax Regs. It has long been established that under an accrual method of accounting an expense is deductible for the taxable year in which all events have occurred which determine the fact of liability and the amount thereof can be determined with reasonable accuracy. *United States v. Anderson,* 269 U.S. 422; sec. 1.461-1(a)(2), Income Tax Regs.

In both the *Abingdon Potteries* and *Barrett* cases, on facts very similar to the facts here, we held that the taxpayer had not incurred a liability to make the contribution to the trust within the prior taxable year and, hence, the contribution made within the grace period was not accruable in the prior year and not deemed paid under section 23(p)(1)(E). The following quote from *Abingdon Potteries, Inc.,* points up the similarity of the facts in that case and this and supports our conclusion on this point:

It seems clear to us that the item in question did not accrue in 1944. No pension trust whatever had been created in 1944. True, petitioner's board of directors had resolved on December 28, 1944, to create such a trust, presumably to be patterned after a specimen instrument submitted to it, and had authorized a contribution of not to exceed $25,000 to such trust. But that trust was not in fact created until January 26, 1945, and it was only on January 25, 1945, that the trustees who were to serve were named. And there is no evidence that the employees were notified of the trust prior to January 30, 1945. In these circumstances, it is difficult to see how any liability could accrue against petitioner on December 28, 1944, with respect to the amount involved. All that happened on that day was a unilateral determination by petitioner to create a trust in the future and to make a contribution to such trust. If, for any reason, petitioner's board of directors should have decided on, say, January 20, 1945, not to go through with the plan, it could doubtless have met and resolved to abandon it, without subjecting petitioner to liability to anyone. [19 T.C. at 26-27.]

See also *Precision Industries, Inc.,* 64 T.C. 901 (1975), recently decided by this Court.

*Decision will be entered for the respondent.*