G & W LEACH CO., Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
G & W Leach Co. v. Commissioner
Docket No. 7176-79R.
United States Tax Court
T.C. Memo 1981-91; 1981 Tax Ct. Memo LEXIS 647; 41 T.C.M. (CCH) 988; T.C.M. (RIA) 81091; 2 Employee Benefits Cas. (BNA) 1033; February 26, 1981. Howard A. Minsky, for the petitioner. Robert W. Lynch, for the respondent. DAWSON
MEMORANDUM OPINION DAWSON, Judge: This case involves an action for declaratory judgment under section 7476[1] whereby petitioner has asked this Court to determine whether its profit sharing plan and trust qualify under section 401 for the taxable years ended September 30, 1975 and 1976. Respondent issued final adverse determination letters on February 26, 1979, which stated that a plan and trust satisfying the requirements of sections 1.401-1(a)(2) and 1.401-2(a)(2), Income Tax Regs., did not exist during those years. On March 11, 1980, respondent filed a certified administrative record in this case pursuant *649 to Rule 217(b)(1), Tax Court Rules of Practice and Procedure, after he and petitioner were unable to agree on a stipulated administrative record. The certified administrative record is incorporated herein by reference. The pertinent facts are summarized below. The petitioner (sometimes hereinafter referred to as the Corporation) is a Pennsylvania corporation whose taxable year ends September 30. On August 20, 1974, its directors and shareholders signed a document entitled "Consent Actions by Directors and Shareholders in Lieu of Regular Meeting," and thereby gave their consent to certain specified actions to be taken by the Corporation. Paragraph 8 of the document contained the following resolution: RESOLVED that immediate steps be taken to implement a profit sharing plan for the Corporation to cover all officers and employees who qualify. The Treasurer of the Corporation is authorized to issue out a check to establish an independent profit sharing account to be independently administered. On November 25, 1974, Howard A. Minsky, who is the Corporation's attorney and is not an officer or director thereof, executed a standard form supplied by the Mellon Bank, N.A., entitled *650 "Certified Resolutions of Board of Directors", which established an account at the bank in the name of "G & W Leach Company, Profit Sharing Trust" (hereinafter the Mellon account). The resolution authorized withdrawals from the account by any two of the following persons: William B. Leach, President and Treasurer of the Corporation; Alphonse G. Chesnos, Vice President of the Corporation; and Howard A. Minsky. The Corporation made several deposits to the Mellon account, as follows: Date
Amount
November 1974
$ 20,000
December 1975
30,000
November 1976
32,000
These funds were variously invested in United States Treasury Bills, Special Mellon Bank Passbook Accounts, Ford Motor Credit Company Notes, and Mellon Bank Savings Certificates. These investments were purchased and held in the name of G & W Leach Company Profit Sharing Trust. In January 1975 Howard A. Minsky met with the Corporation's employees and informed them of the Corporation's intent to establish a profit sharing plan. He discussed in general with them the provisions of a copy of another company's profit sharing plan which had been supplied to him by the Corporation's accountant. The plan *651 had been drafted prior to the enactment of the Employee Retirement Income Security Act of 1974 (ERISA) and did not comply with its provisions. Also in January 1975 a Trustee Bond was procured from the Hartford Insurance Company to cover William B. Leach, Alphonse G. Chesnos, and Howard A. Minsky, all of whom had agreed to act as trustees of the proposed profit sharing trust. The Trustee Bond was to be effective from January 1, 1975, to January 1, 1978. Preliminary and final Forms EBS-1 pertaining to the proposed profit sharing plan were filed by the Corporation with the United States Department of Labor on August 29, 1975 and July 30, 1976, respectively. On May 28, 1976, the Corporation distributed to its employees a written notice which provided, in part, as follows: Notice to All Present Employees Eligible to Participate An Application is to be made to the Internal Revenue Service for an advance determination on the qualifications of the following employee retirement plan. G & W LEACH COMPANY, PROFIT SHARING TRUST PLAN G & W LEACH COMPANY, APPLICANT 25-1190956 G & W LEACH COMPANY, PLAN ADMINISTRATOR The application will be submitted to the District Director of *652 the Internal Revenue at Pittsburgh, Pa. for an advance determination as to whether or not the plan qualifies under section 401(a) of the Internal Revenue Code, with respect to initial qualification. The employees eligible to participate under the plan are: All employees 25 years of age or older who have completed one year (1000 hours of service) of service with the G & W Leach Company. The Internal Revenue Service has not previously issued a determination letter with respect to the qualification of this plan. Additional informational material regarding the plan and the procedures to be followed in submitting, or requesting the Department of Labor to submit, a comment, may be obtained at G & W Leach Company, 30 Isabella Street, Pittsburgh, Pennsylvania, 15212. Sincerely yours, (S) Howard A. Minsky On October 29, 1976, an agreement entitled "G & W Leach Company Profit Sharing Plan and Trust Agreement" was executed by the Corporation and by trustees William B. Leach, Alphonse G. Chesnos, and Howard A. Minsky. Article II, paragraph 2.6 of the plan states that its effective date is August 20, 1974. The plan was modeled after both the pre-ERISA *653 plan discussed in the January 1975 meeting and a prototype plan which Howard A. Minsky obtained at an American Bar Association Pension and Profit Sharing Seminar in Arizona in February 1974, and was intended to comply with the ERISA standards. By letter dated October 30, 1976, Howard A. Minsky requested a determination from respondent as to the qualified status of its profit sharing plan and trust under sections 401(a) and 501(a). Attached to the letter was a Power of Attorney (Form 2848) executed by the petitioner in favor of Howard A. Minsky, and an Application for Determination for Defined Contribution Plan (Form 5301) executed by Howard A. Minsky on October 29, 1976. On February 17, 1977, the District Director for the Internal Revenue Service in Baltimore, Maryland issued a proposed adverse determination letter for the taxable years ended September 30, 1974 and 1975, on the ground that the plan document was not executed prior to the close of those taxable years. Petitioner appealed the adverse determination and on May 20, 1977 the Assistant Regional Commissioner, Employee Plans and Exempt Organizations, upheld the adverse determination and also determined that the profit *654 sharing plan did not qualify for the taxable year ended September 30, 1976. Petitioner then appealed the adverse determinations to respondent's National Office. On February 26, 1979, respondent, through its Associate Chief, Appeals Office, Philadelphia, Pennsylvania, issued final adverse determination letters for the taxable years ended September 30, 1974, 1975, and 1976, stating that the plan did not qualify because (1) it was not adopted or communicated to petitioner's employees before the close of those taxable years as required by section 1.401-1(a)(2), Income Tax Regs., and (2) there was no trust agreement in existence during those years prohibiting the diversion of funds for purposes other than the exclusive benefit of the employees or their beneficiaries as required by section 1.401-2(a)(2), Income Tax Regs. Having exhausted all administrative remedies as required by section 7476(b)(3), petitioner then sought a declaratory judgment in this Court concerning the qualification of the plan and trust for the 1975 and 1976 fiscal years. The issue in this case is whether the profit sharing plan and trust were in existence prior *655 to the close of the taxable years in issue. [2]In order to qualify under section 401(a) (and thereby qualify as an exempt trust under section 501(a)) a profit sharing trust must be "part of a stock bonus, pension, or profit sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries." Section 1.401-1(a)(2), Income Tax Regs., provides in part that the plan must be "a definite written program and arrangement which is communicated to the employees." With respect to the trust itself, section 401(a)(2) provides that the trust will not qualify unless: *656 (2) if under the trust instrument it is impossible, at any time prior to the satisfaction of all liabilities with respect to employees and their beneficiaries under the trust, for any part of the corpus or income to be (within the taxable year or thereafter) used for, or diverted to, purposes other than for the exclusive benefit of his employees or their beneficiaries; This requirement of section 401(a)(2) is further explained in section 1.401-2(a)(2), Income Tax Regs., which provides, in part, as follows: (2) As used in section 401(a)(2), the phrase "if under the trust instrument it is impossible" means that the trust instrument must definitely and affirmatively make it impossible for the nonexempt diversion or use to occur, whether by operation or natural termination of the trust, by power of revocation or amendment, by the happening of a contingency, by collateral arrangement, or by any other means. * * * Respondent makes essentially two arguments in this case. First, he argues that during the taxable years in question there did not exist a definite written *657 profit sharing plan which had been communicated to petitioner's employees as required by section 1.401-1(a)(2), Income Tax Regs. Second, he argues that a valid trust containing language making it impossible to divert income or corpus to purposes other than the exclusive benefit of petitioner's employees had not been established as required by section 1.401-2(a)(2), Income Tax Regs.
Petitioner contends that a valid profit sharing plan and trust conforming to the requirements of the regulations did exist during the taxable years in question, as evidenced by the following facts: (1) the creation of an account in November 1974 at the Mellon Bank, N.A., under the name of "G & W Leach Company, Profit Sharing Trust"; (2) the deposits made to that account by petitioner in November 1974, December 1975, and November 1976; (3) the discussion in January 1975 with petitioner's employees of a profit sharing plan used by another company which, although it did not conform to ERISA standards, was allegedly similar to the plan which petitioner proposed to adopt; (4) the Trustee Bond obtained from the Hartford Insurance Company in January 1975 covering *658 William B. Leach, Alphonse G. Chesnos, and Howard A. Minsky as trustees of the proposed profit sharing trust; (5) the notice given to petitioner's employees in May 1976 indicating the general requirements for eligibility under the plan; and (6) the filing of preliminary and final Forms EBS-1 pertaining to the plan with the Department of Labor in August 1975 and July 1976, respectively. We agree with respondent and hold that the foregoing facts are insufficient to prove the existence of a profit sharing plan and trust satisfying the regulations at any time prior to the close of the taxable year ended September 30, 1976. In Engineered Timber Sales, Inc. v. Commissioner,74 T.C. 808 (1980), a Court-reviewed opinion, we carefully examined the meaning and the purpose of the requirements set forth in section 1.401-1(a)(2), Income Tax Regs. The facts of the case may be summarized as follow-. The Commissioner disallowed a deduction by the taxpayer, Engineered Timber Sales, Inc. (ETS), for a profit sharing plan contribution made on December 31, 1974, on the ground that the plan was not in existence at the time of the contribution. Early in *659 December 1974 Mr. and Mrs. Pugh, the sole members of the ETS board of directors and each a 50-percent shareholder, began to consider the creation of some form of deferred compensation plan for the employees of the company. On December 10, 1974, Mrs. Pugh consulted with an attorney to discuss the requirements of a qualified retirement plan. During a follow-up meeting on December 20, 1974, which Mr. Pugh also attended, the attorney was instructed to draft the documents necessary to create a profit sharing plan and trust qualifying for the 1974 taxable year. The attorney advised Mr. and Mrs. Pugh to delay the drafting of the plan document until further clarification of the newly enacted ERISA standards could be obtained from the Internal Revenue Service. However, he did proceed to draft a formal trust instrument and a notice to employees, both of which were adopted and executed by the ETS board of directors on December 30, 1974. The following day ETS deposited $ 16,123 in a local bank as its 1974 contribution to the profit sharing trust. On February 18, 1975, the attorney submitted a profit sharing plan document to the ETS board of directors which was formally adopted by the board *660 on April 15, 1975. The plan provided that its effective date was December 31, 1974. The ETS employees were orally informed of basic details of the plan prior to December 25, 1974. The only written confirmation of the ETS profit sharing plan was the employee notice drafted by the attorney, which provided only general details regarding plan eligibility and may not have been made publicly available to the employees until after December 31, 1974. Other than this written notice, the trust instrument, the resolution of the board of directors creating the trust, certain notes taken by Mrs. Pugh and the attorney during their meetings, and an internal memorandum prepared by the attorney following the meeting on December 10, there was no written evidence of the taxpayer's profit sharing plan as of December 31, 1974. The Commissioner contended that the contribution deduction was improper because the profit sharing plan failed to satisfy the requirement in section 1.401-1(a)(2), Income Tax Regs., that the plan be a definite written program and arrangement which is communicated to the employees. The taxpayer, on the other hand, argued that (1) the regulation *661 was invalid to the extent it required a written plan, and (2) even if the regulation was valid, the various writings pertaining to the plan which were in existence on December 31, 1974 were, in the aggregate, sufficient to constitute a definite written program. We rejected these arguments, holding that the regulation was a valid interpretation of the term "plan" as used in section 401(a), and that it required "express, affirmative intent and conduct in the form of a written, permanent, specific program." Engineered Timber Sales, Inc. v. Commissioner,supra at 822. With regard to the specific nature of the written program required we stated as follows (74 T.C. at 827): After consideration of the above cases and the congressional intent in regulating the pension and profit-sharing area, we conclude that the "definite written program and arrangement" terminology of section 1.401-1(a)(2), Income Tax Regs., should be broadly construed to encompass various formats, including a collection of writings which creates a specific permanent *662 plan. However, such a composite of documents would qualify as a section 401(a) deferred benefit plan only when it embodies all plan elements expressly required by section 401(a) which are both essential (1) to inform participating employees and their beneficiaries of their specific benefits, rights, and obligations, and (2) to insure the plan's enforceability. Applying these tests to the writings which allegedly comprised the ETS profit sharing plan, we observed that the trust instrument failed to specify standards for eligibility, participation and vesting, and contained no formula for contributions. Nor did it detail the events which would trigger the payment of benefits. The notes and memorandum stemming from the conferences with the attorney indicated only that the board of directors had considered or tentatively agreed to certain provisions concerning these matters. In short, the writings did not contain the precise and absolute rules necessary in order for the plan to be enforceable by ETS employees, and, therefore, did not constitute a plan within the meaning of section 401(a). Furthermore, we concluded that neither the oral disclosures to the ETS employees nor the employee *663 notice specifying standards for eligibility constituted adequate communication of the plan as required by section 1.401-1(a)(2), Income Tax Regs.
The facts of the present case call for a similar conclusion. The record fails to establish either the existence or the communication of a writing or collection of writings on or before September 30, 1976, which would be sufficient to (1) inform plan participants of the essential provisions of the plan ultimately adopted on October 29, 1976, and (2) insure the plan's enforceability by the participants. We attach little significance to the discussion of another company's plan with the Corporation's employees in January 1975 because that plan did not conform to ERISA standards. Since the enactment of ERISA in 1974 wrought substantial changes in the requirements for plan qualification and the plan executed by petitioner on October 29, 1976 was intended to conform to those revised standards, the pre-ERISA plan could not possibly qualify as a "definite written program" prior to the adoption of the final version. It follows, then, that communication of the details of such a plan could not constitute adequate notification *664 under the regulation. The only other communication to the employees disclosed by the administrative record is the employee notice distributed on May 28, 1976. That notice, which contained only general statements regarding plan eligibility and a suggestion that the employee contact the employer for further details, is no more informative than the notice which we discounted in Engineered Timber Sales. Thus, on this record we conclude that a plan within the meaning of section 1.401-1(a)(2), Income Tax Regs., was neither in existence nor communicated to petitioner's employees during the taxable years in issue. [3]
In addition to arguing that petitioner's profit sharing trust *665 was not part of a qualified plan under section 401(a), respondent also maintains that the trust failed to satisfy section 401(a)(2), as amplified by section 1.401-2(a)(2), Income Tax Regs., because during the relevant periods there did not exist a trust instrument containing definite and affirmative language prohibiting the diversion of trust income or corpus to purposes other than the benefit of the employees or their beneficiaries. Petitioner, on the other hand, contends that a qualifying trust was created in November 1974 with the initial deposit of funds into the Mellon account, and that the existence of the trust is further supported by the subsequent deposits to the account and procurement of a fiduciary bond in January 1975 to cover the persons alleged to be the trustees. Although acknowledging that a formal trust instrument was not executed until October 29, 1976, petitioner maintains that under existing case law the execution of such an instrument within the taxable year is not an absolute prerequisite to trust qualification. There is some authority to support petitioner's position. For example, in Dejay Stores, Inc. v. Ryan,229 F.2d 867 (2d Cir. 1956), *666 the taxpayer attempted to deduct a contribution to a pension trust made after the end of the taxable year but within the 60-day grace period allowed by section 23(p)(1)(E), Internal Revenue Code of 1939 (the predecessor to section 404(a)(6) of the 1954 Code). Although a written trust agreement was not executed until after year-end, the Court found that the board of directors had adopted a detailed pension plan and agreed with the proposed trustee on the terms of the trust prior to year-end. Thus, the Court indicated that the contribution to the trust would be deductible provided a formal trust instrument was executed before the expiration of the grace period. Accord, Hill York Corp. v. United States, an unreported case ( S.D. Fla. 1964, 14 AFTR 2d 5160, 64-2 USTC par. 9654). See also Barrett Timber & Dunnage Corp. v. Commissioner,29 T.C. 76 (1957). The issue was also raised in Catawba Industrial Rubber Co., Inc. v. Commissioner,64 T.C. 1011 (1975). In that case the board of directors of the taxpayer, whose taxable year ended April 30, held a special meeting on April 25, 1972, to consider the establishment of a profit sharing *667 plan and trust. The board considered and approved a plan and trust agreement and also authorized an initial contribution of $ 100 to the trust in order to make the trust operative. Additionally, the board approved a resolution authorizing a yearly contribution to the trust in an amount equal to 15 percent of the annual company payroll. The first such yearly contribution was paid on July 13, 1972, or within the grace period provided by section 404(a)(6). A formal trust instrument was not executed until June 14, 1972. As a result, the Commissioner disallowed a deduction for the contribution on the ground that a trust incorporating the restrictions imposed by section 401(a)(2) did not exist as of April 30, 1972. This Court noted that there was a split of authority over the question of whether a written trust agreement containing the proper restrictions must be executed prior to the end of the taxable year for which the deduction is sought, or whether such agreement need only be executed before any contributions are actually made to the trust within the contribution grace period provided by section 404(a)(6). We noted some justification for the latter view since the execution *668 of a written agreement before the deposit of any funds in the trust would eliminate the possibility of those funds being diverted for prohibited purposes. However, we declined to adopt one view or the other, holding that even under the more liberal approach some definitive action, i.e., action which would impose legal obligations on the parties to the trust, must be taken during the taxable year in order to establish the trust's existence. We further held that such action did not take place during the taxable year ended April 30, 1972, principally because there was no indication that the trust agreement considered by the board of directors on April 25, 1972 was the same as the document eventually executed on June 14, 1972, or that the trustees had accepted the terms of the trust prior to its formal execution. 64 T.C. at 1015-1017; see particularly n. 2. We also found the necessary definitive action to be lacking in I.S.C., Inc. v. Commissioner, T.C. Memo. 1978-288, affd. without published opinion 609 F.2d 501 (3d Cir. 1979). The facts differed from those in Catawba Rubber Co. in that the taxpayer had executed a formal stock bonus *669 plan before the end of the taxable year in issue. However, as of year-end the taxpayer's board of directors had only approved a draft of the related trust agreement; a formal trust instrument was not executed until the date of the first contribution to the trust, which occurred after year-end but within the section 404(a)(6) grace period. Because there was no evidence to indicate the terms of the draft trust agreement considered by the directors, or that such terms were ever communicated to or agreed upon by the proposed trustee prior to year-end, we held that the trust failed to qualify for that year, notwithstanding the timely execution of the plan itself. To summarize, it appears there is some authority for the proposition that a written trust agreement need not be executed by the end of the taxable year for which qualification is sought, provided that even occurs before any contributions to the trust are made. In Catawba Rubber Co. this Court took a neutral stance with respect to the validity of this approach. However, we did state that, regardless of when the written agreement is executed, there must, at a minimum, be some definitive action taken during the taxable year *670 creating legal obligations on the parties to the trust in order to satisfy the requirements of section 401(a). Turning now to the present case, we find that the exception recognized in Dejay Stores has no application because contributions to the Mellon account were made for several years prior to the date on which a formal trust instrument was executed, thereby allowing the possibility of diversion of those funds to nonexempt purposes during the intervening period. Under these circumstances we think that the requirements of section 401(a)(2) could be satisfied only by the execution of a legally binding and suitably restricted written trust agreement within the taxable year for which qualification is desired. [4] Even if we were to assume, for purposes of this case, that a timely executed instrument is not absolutely essential to trust qualification, there is still no evidence of the minimum definitive action which we have found necessary to establish a trust's existence within a specific taxable year. See CatawbaIndustrial Rubber Co., Inc. v. Commissioner,supra; I.S.C., Inc. v. Commissioner, supra. While there is evidence to show that *671 the directors of the Corporation intended to set up a profit sharing trust, that a bank account was established for that purpose, and that persons were selected to act as trustees, we can find no evidence of any binding agreement, either written or oral, which would definitely and affirmatively restrict the right of the Corporation to apply the funds contributed for its own purposes. In our view such an agreement did not arise until the execution of the formal plan and trust agreement on October 29, 1976. Accordingly, we hold that petitioner's profit sharing plan and trust failed to satisfy the conditions of sections 1.401-1(a)(2) and 1.401-2(a)(2), Income Tax Regs., for the taxable years ended September 30, 1975 and 1976, and we sustain respondent's adverse determination. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue, unless otherwise indicated.↩
2. This Court has discretion under section 7476(b)(2)↩ to refuse to render a declaratory judgment where it appears that the notice requirements of that provision have not been satisfied by the petitioner. In the present case the pleadings raise an issue as to whether such requirements have been satisfied. However, respondent appears to have abandoned this issue on brief, and since there are facts in the record which indicate that the required notice was in fact given to all interested parties, we will decide this case on the merits.
3. The preliminary and final Forms EBS-1 supplied to the Department of Labor on August 29, 1975 and July 30, 1976, respectively, were not included in the administrative record in this case. Thus, we cannot rely on the details of those documents as proof of the existence of a definite written program prior to the formal adoption of the plan on October 29, 1976. Moreover, there is no evidence that the contents of these forms were ever communicated to petitioner's employees.↩
4. Because the facts of Dejay Stores↩ are readily distinguishable from the facts of this case, and because the parties have not briefed the merits of the exception recognized therein, we express no opinion as to its validity.