SEBASTIAN AND SHARON ATTARDO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Attardo v. Commissioner
Docket No. 19732-88
United States Tax Court
T.C. Memo 1991-357; 1991 Tax Ct. Memo LEXIS 406; 62 T.C.M. (CCH) 313; T.C.M. (RIA) 91357; August 1, 1991, Filed *406 Decision will be entered under Rule 155. Bradley J. Davis and Victoria J. Alvarez, for the petitioners. Steve R. Johnson, for the respondent. COHEN, Judge. COHEN
MEMORANDUM OPINION Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Additions to Tax
Sec.
Sec.
Year
Deficiency
6653(a)(1)
6653(a)(2)
1984
$    759
$    38
50% of interest
due on $ 759
1985
41,574
2,079
50% of interest
due on $37,361
After agreement as to other adjustments, the remaining issues for decision are (1) whether petitioners are entitled to a $ 39,788 deduction they claimed in 1985 for a contribution to petitioner Sebastian Attardo's defined benefit pension plan and (2) whether petitioners are liable for the additions to tax for negligence. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All of the facts have been stipulated, and the stipulated facts are incorporated as our findings by this reference. Petitioners Sebastian and Sharon Attardo were *407 husband and wife and filed joint Federal income tax returns for 1984 and 1985. At the time the petition was filed, petitioners resided in the State of Florida. Background
On December 28, 1976, Sebastian Attardo (petitioner) executed a document entitled "Adoption Agreement for Self Employed Retirement Plans" (the adoption agreement). Attached to the adoption agreement was a prototype defined benefit pension plan entitled "Combination Retirement Plan for the Self Employed" (the plan). Petitioner was the sole employee-participant in the plan. The adoption agreement and the plan were prepared by Planned Retirement Consultants & Administrators, Inc.
The plan provided that an employer desiring to adopt the plan: shall do so by completing and executing the Adoption Agreement which forms a part of the Plan and by executing, together with a trustee selected by him, the Trust Agreement which also forms a part of the plan.
The plan contained the following definitions: "Plan" shall mean the Retirement Plan adopted by the employer by completion and execution of the Adoption Agreement and by execution, together with the trustee, of the Trust Agreement which forms a part *408 of the Plan. * * * "Adoption Agreement" shall mean the Adoption Agreement which the employer completed and executed to adopt the Plan and which forms a part of the Plan. * * * "Trust Agreement" shall mean the Trust Agreement which is executed by the employer, together with the trustee selected by the employer, and which forms a part of the Plan. * * * "Trust Fund" shall mean all contributions paid to the trustee under the Plan to be held in accordance with the Trust Agreement, together with any income therefrom and increment thereon.
Petitioner does not recall executing a separate trust agreement in connection with the implementation of the plan. At the time the adoption agreement was executed, petitioner relied on the representation of counsel that the plan complied with the requirements of the Internal Revenue Code. The Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324, the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, 98 Stat. 494, and the Retirement Equity Act of 1984 (REA), Pub. L. 98-397, 98 Stat. 1426, required that deferred compensation plans be amended in order to maintain their qualified status. The plan *409 was not amended to conform with the above acts or with subsequent legislation until sometime after January 1, 1989. Petitioner believed that he was authorized to withdraw funds from the plan in the form of a loan. In 1987 and 1988, petitioner withdrew money from the plan accounts and intended that those withdrawals be treated as loans; as of the date of the stipulation, January 25, 1991, no repayments were made, and no loan agreements were prepared or executed with respect to those withdrawals. As trustee of the plan, petitioner made several purchases of stock (the stock purchases). Petitioner purchased the stock from the Stuart James Company (Stuart James). As a stockbroker for Stuart James, petitioner earned a commission of approximately 1 percent on the stock purchases. With respect to contributions, the plan provided that "the employer shall contribute that amount necessary to currently fund the plan on a level premium funding basis." The plan also provided that the amount contributed by an employer on behalf of a self-employed individual shall "not exceed seventy-five hundred dollars ($ 7,500)." Tax Treatment
Petitioners' 1984 and 1985 Federal income tax returns *410 were prepared by Scott Slayback (Slayback). Slayback was not an attorney or an accountant but was in the business of preparing tax returns. Although petitioner was aware that Slayback was in that business, petitioners did not otherwise investigate Slayback's credentials or expertise. Petitioners had no reason to believe that Slayback was or was not qualified to prepare their returns. Petitioners provided Slayback with information as to their 1984 and 1985 tax returns. Prior to signing the returns that Slayback prepared, petitioners did not review them in detail and did not ascertain whether the amounts on the returns corresponded to the information petitioners had provided to Slayback. Petitioner made contributions to the plan in 1985 and, based on Slayback's computation of the amount that was needed to fund the plan on a level premium funding basis, petitioners claimed a deduction of $ 39,788 on their 1985 return. Respondent disallowed the claimed deduction. Petitioners' treatment of other items on their 1984 and 1985 returns form the basis of the additions to tax for negligence. The parties' agreement with respect to those items is as follows: Proper
Amount Not
Amount per
Amount per
Substantiated
Item
Return
Agreement
& Not Allowed
1984
Schedule C
$ 11,283
$ 8,111
$  3,172
expenses
Dependency
3,000
0
--  exemptions
Dividend income
0
139
--  (omitted)
Capital loss
60
0
--  (overstated)
1985
Schedule C
41,342
7,959
33,383
expenses
Dependency
1,040
0
--  exemption
Investment
675
0
--  tax credit
Alimony
3,300
1,405
1,895
deduction
Interest
5,000
3,299
1,701
expense
*411 The parties also agree that petitioners improperly used the income averaging method to compute their Federal income tax liability for 1985. Discussion
Pension Plan Issue
The first issue for decision is whether petitioners are entitled to a deduction for the 1985 contribution to the plan. Respondent's position is that the contribution is not deductible because: (1) the Plan was not properly adopted in 1976 or at any time thereafter, (2) in substance, the Plan lacked economic reality, (3) in the alternative, the Plan was defective in form in 1976 and at all times thereafter, and (4) in addition, the Plan was formally defective in 1985 because amendments required by post-1976 legislation were not made. Petitioners' position is that the facts: indicate that Petitioner maintained and operated a qualified plan and trust. Petitioner operated the Plan in accordance with the prototype plan document as adopted, and reasonably relied on the prototype's sponsor with respect to the Plan's qualified status. Petitioner accounted for and invested the assets of the Plan separate and apart from his personal assets and investments, and managed the trust fund as Trustee of *412 the Plan. Consequently, the contributions to the Plan for the 1985 taxable year are deductible under Section 404(a)(1) of the Internal Revenue Code.
Section 404(a) provides generally that an employer's contribution to a pension plan shall be deductible if it satisfies the conditions of section 162 or 212 and if it satisfies the additional limitations of section 404(a). Section 404(a)(1)(A) provides that contributions are deductible in the taxable year when paid if they are paid into a pension trust and if such taxable year ends within or with a taxable year of the trust for which the trust is exempt under section 501(a). Section 501(a), in turn, provides that an organization described in section 401(a) shall be exempt from tax. Section 401(a) lists various requirements that must be met by a trust forming part of a pension plan in order for that trust to be eligible for favored tax treatment under various sections of the Internal Revenue Code. In order for a plan to be qualified, both its terms and its operations must meet the statutory requirements. Buzzetta Construction Corp. v. Commissioner, 92 T.C. 641, 646 (1989). Respondent's first contention, that *413 the plan was not properly adopted, is based on petitioner's failure to execute a trust agreement in accordance with the plan. Respondent acknowledges that "Many cases * * * have denied claimed deductions because, although a pension plan had been adopted, the associated trust was not in existence during the tax year in question." Respondent nevertheless argues: While those authorities are germane to the case here as well, the respondent's argument is more fundamental than that. Because the Plan itself provided that one of the acts necessary to adopting the Plan was execution of the contemplated Trust Agreement, * * * [petitioner's] failure to execute the Trust Agreement meant that he did not effectively adopt the Plan.
Those authorities to which respondent refers, however, are dispositive. The first case to which respondent refers is Catawba Industrial Rubber Co. v. Commissioner, 64 T.C. 1011 (1975). As in effect for the year in issue in that case, section 404(a)(3) allowed a deduction for the taxable year if a contribution was paid into a profit-sharing trust and if such taxable year ended within or with a taxable year of the trust with respect to *414 which the trust was exempt under section 501(a); the former section thus is analogous to section 401(a)(1) as applicable to pension trusts in the instant case. The issue for decision in that case was whether the taxpayer had established a qualified profit-sharing trust under section 401(a). The taxpayer-corporation reported its taxable income on a fiscal year ending April 30. On April 25, 1972, the taxpayer's board of directors (the board) approved the adoption of a profit-sharing plan. The board also discussed and approved the provisions of a trust and authorized a disbursement of $ 100 to the trust. A trust agreement and the plan were not executed until June 14, 1972; the trust agreement executed on that date was essentially the same as that considered by the board at the aforementioned meeting. A contribution was made within the applicable time period; respondent disallowed the taxpayer's claimed deduction for the contribution because he determined that no valid plan was in existence as of April 30, 1972, and that no written trust instrument had been executed as of that date. We stated that "section 401(a) clearly contemplates the existence of a trust within the employer's *415 taxable year in which deductions for contributions are claimed" and that "there must be a trust in existence within the taxable year to allow the deduction." Catawba Industrial Rubber Co. v. Commissioner, 64 T.C. 1011, 1015 (1975). We found that a trust was not created prior to April 30, 1972, notwithstanding that it could be argued that the board intended to create a trust at their meeting and that their failure to take the necessary steps to do so prior to the fiscal year-end was a technical omission that should not deny the taxpayer the claimed deduction. In that regard, we stated: The requirements of section 401(a) for a qualified trust are also quite technical and stringent, and we believe some definitive action to create a trust that would be binding on the parties to the trust must be taken to bring such a trust into existence. * * * [Catawba Industrial Rubber Co. v. Commissioner, 64 T.C. at 1017.]
We therefore concluded that the contribution was not deductible under section 404(a) because the "trust could not have a taxable year beginning prior to its creation." Catawba Industrial Rubber Co. v. Commissioner, 64 T.C. at 1017. *416 In the instant case, the adoption agreement was the only document that petitioner executed in connection with the implementation of the plan. Further, petitioner concedes that he "does not recall having executed a separate trust document." Petitioners, however, assert that it is "not altogether clear that a separate document for the trust provisions was contemplated" and argues that "the trust provisions are included in the plan document, and no separate trust document was prepared or executed because a separate trust was * * * not necessary." In support of that argument, petitioners point to provisions of the plan that "deal with the powers and responsibilities of the trustee," to one provision of the plan that refers to "this Trust Agreement," and also to the adoption agreement that "provides a line for the name of the Trustee selected for the Plan." We addressed a similar contention of the taxpayer in I.S.C., Inc. v. Commissioner, T.C. Memo 1978-288, affd. without published opinion 609 F.2d 501 (3d Cir. 1979). On September 21, 1970, the taxpayer's board of directors (the board) considered and adopted a plan and a trust agreement. The *417 trust agreement was not executed by the trustee, however, until June 14, 1971. We found that a trust was not created prior to September 30, 1970, the last day of the taxpayer's taxable year. We then addressed the taxpayer's argument "that as the trust was part of its stock bonus plan, execution of the plan on September 21, 1970, constituted execution of the trust," and we stated: The * * * [taxpayer's] argument is that the trust agreement is incorporated by reference into the plan, thereby rendering all the terms of the trust agreement terms of the plan. Again, the language of the plan clearly contemplates that execution of the trust agreement was necessary to create the trust. Moreover, no trust agreement was attached to the plan executed September 21, 1970. In light of these facts, we can give no weight to the * * * [taxpayer's] argument. [I.S.C., Inc. v. Commissioner, T.C. Memo 1978-288, 1978 Tax Ct. Memo LEXIS 223, 37 T.C.M. (CCH) 1206, 1213, T.C.M. (RIA) 78288 at 1198 (1978), affd. without published opinion 609 F.2d 501 (3d Cir. 1979).]
Similarly, the plan in the instant case contemplated and required the execution of a separate trust agreement. In order *418 to adopt the plan, the employer was required to complete and execute "the Adoption Agreement which forms a part of the Plan" and to execute "the Trust Agreement which also forms a part of the Plan." (Emphasis supplied.) Further, the plan, the adoption agreement, and the trust agreement were all separately defined within the plan itself. These facts indicate that petitioner was required to execute a separate adoption agreement and trust agreement and that only after execution did those agreements become a part of the plan. The references in the plan to the "power and responsibilities" of the trustee generally enumerate the responsibilities of the trustee in administering the plan itself and, contrary to petitioners' contention, do not establish that a "trust agreement" was included in the plan; rather, such references are consistent with our conclusion. For example, one paragraph of the plan on which petitioner relies provides that "Contributions under the Plan shall be accepted by the trustee and * * * shall constitute the Trust Fund." The definition of the "Trust Fund" explains that "all contributions paid to the trustee under the Plan [are] to be * * * held *419 in accordance with the Trust Agreement." (Emphasis supplied.) We also reject petitioners' contention that references in the plan to "this Trust Agreement" indicate that the trust provisions are contained within the plan. All such references appear after the paragraph in the plan that provides that "The provisions of the Trust Agreement are incorporated into and made a part of the Plan." (Emphasis supplied.) Finally, we attach no significance to petitioners' reference to the adoption agreement, which they recognize "provides a line for the name of the Trustee selected for the Plan." We conclude that petitioner did not execute a separate trust agreement and that the provisions of a trust agreement were not included within the plan. Petitioner therefore did not comply with the terms of the plan, which required that a trust agreement be executed to adopt the plan, or with the statutory requirements, which dictate that a trust be in existence within the employer's taxable year in which deductions for contributions are claimed. In any event, "The law is concerned not only with the form of a plan but also with its effects in operation"; thus, whether or not a bona fide *420 pension plan exists must be determined based upon the substance of the transaction and the surrounding and attendant circumstances. Sec. 1.401-1(b)(3), Income Tax Regs.
TEFRA, DEFRA, and REA required that deferred compensation plans be amended in order to maintain their qualified status. Petitioners acknowledge that "Petitioner was not aware that the Plan had not been properly amended" to conform with those acts and that no action was taken in this regard "until the investigation of the facts for purposes of * * * [the instant] proceeding." In fact, the plan was not amended to conform with the above acts or with subsequent legislation until sometime after January 1, 1989. Petitioners also argue that "None of the required amendments * * * affected Petitioner's Plan during 1985 and 1986." That a defective provision does not become operative, however, does not mean that the plan meets the statutory requirements. See Tionesta Sand & Gravel, Inc. v. Commissioner, 73 T.C. 758, 764 (1980), affd. without published opinion 642 F.2d 444 (3d Cir. 1981). Further, petitioner withdrew money from the plan accounts in 1987 and 1988. Although petitioner believed *421 that he was authorized to withdraw funds from the plan in the form of a loan and intended that those withdrawals be treated as loans, petitioner did not treat those amounts as such. Rather, as of the date of the stipulation, January 25, 1991, no repayments were made, and no loan agreements were prepared or executed with respect to those withdrawals. Finally, petitioner further disregarded the terms of the plan by making contributions in excess of the limits established by the plan. We conclude that, in substance, the plan was not adopted or operated as a defined benefit pension plan. In light of the above, petitioners are not entitled to the claimed deduction for the 1985 contribution. Because of our conclusion, we need not address the parties' other contentions. Negligence Issue
The second issue for decision is whether petitioners are liable for the section 6653(a) additions to tax. Section 6653(a)(1) provides for an addition to tax equal to 5 percent of the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of the rules or regulations. Section 6653(a)(2) provides for a further addition to tax equal to 50 percent of the *422 interest due on the underpayment attributable to negligence. Respondent has conceded that the portion of the underpayment attributable to petitioners' claimed deduction for the pension plan contribution is not subject to the section 6653(a)(2) addition to tax for 1985. For the purposes of section 6653(a), negligence is defined as the lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners bear the burden of proving that respondent's determinations are erroneous. Bixby v. Commissioner, 58 T.C. 757, 791 (1972); Rule 142(a). Petitioners argue that they were not negligent because they: supplied a professional tax return preparer with all relevant information and records for preparation of their 1984 and 1985 tax returns and relied in good faith on the professional preparer's knowledge and experience * * * Generally, the addition to tax for negligence is not imposed where a taxpayer's deductions are taken in good faith and based on advice of a competent tax expert. Otis v. Commissioner, 73 T.C. 671, 675 (1980), *423 affd. without published opinion 665 F.2d 1053 (9th Cir. 1981). To insulate themselves successfully from this addition to tax, however, taxpayers must provide their agents with all relevant information necessary to prepare the return. Pessin v. Commissioner, 59 T.C. 473, 489 (1972). There is no evidence that Slayback was a competent tax expert to justify petitioners' reliance on Slayback's advice in the preparation of the returns. Petitioner was aware that Slayback was in the business of preparing returns, but petitioners did not otherwise investigate Slayback's credentials or expertise and had no reason to believe that Slayback was or was not qualified to prepare their returns. The parties stipulated that petitioners "provided Mr. Slayback with information as to their 1984 and 1985 taxes." Petitioners, however, acknowledge that they have "been unable to locate many of the relevant records either through Mr. Slayback or other sources." Thus, it has not been established that petitioners provided all relevant information to Slayback to enable him to prepare the returns. Petitioners did not review in detail the returns prior to signing them and *424 did not ascertain whether the amounts on the returns corresponded to the information they had provided to Slayback. In view of the numerous erroneous deductions claimed and now conceded, including dependency exemptions to which they were not entitled, we infer that either petitioners did not provide correct information to Slayback or they should have been aware of his errors. Under these circumstances, petitioners are liable for the additions to tax. To reflect the foregoing, Decision will be entered under Rule 155.